LOREN D. TOWLE *vs.* COMMISSIONER OF BANKS.

Suffolk. · March 19, 1923. — September 13, 1923.

Present: RUGG, C.J., DeCOURCY, CROSBY, PIERCE, & CARROLL, JJ.

*Landlord and Tenant. Trust Company,* In liquidation. *Commissioner of · Banks.*

*It is doubtful* whether the mere taking of possession of the property and business of a trust company by the commissioner of banks under the provisions of G. L. c. 167, § 22, would constitute a breach of conditions of a lease to the company of the banking premises, nor furnish grounds for re-entry by the lessor, where the provisions of the lease were that such re-entry might be made " if the Lessee party shall be declared bankrupt or insolvent according to law, or in case proceedings are commenced against the Lessee party in a court of bankruptcy or insolvency, or if any assignment shall be made of the property of the Lessee party for the benefit of creditors, or if said term, or the Lessee party's interest therein, or in the leased premises, shall be attached or taken upon execution, or upon any legal process."

An instalment of rent under a lease in writing is in no sense a debt until it actually is due, and a proof by a lessor of a claim for rent due under the lease, filed with the commissioner of banks in possession of the property and business of a trust company, lessee under the lease, is ineffective as to any instalment of rent falling due after the date of its filing, so that the fact that the lessor did not, within six months after the rejection of the claim so filed, bring any action to enforce claims for rent falling due after the claim was filed, does not under G. L. c. 167, § 28, preclude the prosecution of such claims.

The obligation of a trust company to pay rent as it falls due under the provisions of a lease in writing to it of its banking premises is not discharged as a matter of law by the act of the commissioner of banks in taking possession of the property and business under G. L. c. 167, § 22; and such obligation cannot be discharged by an official act of the commissioner of banks.

After the commissioner of banks under G. L. c. 167, § 22, has taken possession of the property and business of a trust company which occupied its banking

premises under a lease in writing providing for monthly payments of rent, the lessor, notwithstanding the sequestration of the property of the trust company for the purpose of liquidation and application to the payment of its obligations, is not deprived of any remedies given to him under the covenants in the lease which are afforded at law or in equity in such cases, and he still can proceed at law to recover judgment against the trust company for the instalments of rent as they severally become due and payable.

The commissioner of banks, after taking possession of the property and business of a trust company under G. L. c. 167, § 22, continued for more than fourteen months in possession of the banking premises, which were held by the trust company under a lease in writing, and paid instalments of rent as they fell due under the lease. He then vacated the premises and refused to recognize any further liability to the lessor. *Held,* that, although no rights of third parties had intervened, the claims of the lessor for instalments of rent falling due after the commissioner had vacated the premises were not of the nature of those meritorious claims which may be allowed to be proved subsequent to the time limited for proof of claims by the notice given under G. L. c. 167, §§ 22, 23, and to the authorization of the payment of a dividend upon claims seasonably proved.

BILL IN EQUITY under G. L. c. 167, § 36, filed in the Supreme Judicial Court for the County of Suffolk on November 14, 1922, and afterwards amended, alleging that the plaintiff, the lessor in certain leases of the premises occupied by the Cosmopolitan Trust Company in Boston when the defendant took possession of the property and business of the trust company on September 25, 1920, was " in doubt as to what damages should be given him in the circumstances and what course should be followed and what means adopted for the proper treatment of his rights in due process of law," and praying that the defendant be enjoined and restrained from so depleting the assets of the Cosmopolitan Trust Company, subject to the plaintiff's claim, that the plaintiff would be unable to share justly and equitably with the other creditors of the commercial department of that trust company; that the amount of the damages suffered by him in the premises be assessed; that the defendant be directed to set aside sufficient funds from those received by him from the commercial department of the Cosmopolitan Trust Company for the purpose of paying to this plaintiff the same percentage on his claim, justly and properly allowed, as had been and was to be given to other commercial creditors of the Cosmopolitan Trust Company, and that just and

adequate provision be made to pay to the plaintiff all sums that justly and properly should be paid to him in the circumstances.

Other pleadings are described in the opinion.

There was an agreed statement of facts. It appeared that the leases described in the opinion contained the following provision:

" Provided always, and these presents are upon these conditions, that if the Lessee party shall neglect or fail to perform and observe any or either of the covenants contained in this instrument, which on the part of the Lessee party are to be performed, or if the Lessee party shall be declared bankrupt or insolvent according to law, or in case proceedings are commenced against the Lessee party in a court of bankruptcy or insolvency, or if any assignment shall be made of the property of the Lessee party for the benefit of creditors, or if said term, or the Lessee party's interest therein, or in the leased premises, shall be attached or taken upon execution, or upon any legal process, then, and in either of said cases, the Lessor party lawfully may, immediately or at any time thereafter, and whilst such neglect or default or condition continues, and without further notice or demand, enter into and upon the premises, or any part thereof, in the name of the whole, and repossess the same as of their former estate, and expel the Lessee party, and those claiming through or under the Lessee party, and remove the effects of the Lessee party, or of those claiming through or under the Lessee party, forcibly, if necessary, without being deemed guilty of any manner of trespass, and without prejudice to any remedies which might otherwise be used for arrears of rent or preceding breach of covenant, and that thereupon the Lessee party shall be and remain liable for the rent to the date of such entry at the rate hereinbefore reserved; or the Lessor party may, at the discretion of the Lessor party, relet the premises at the risk of the Lessee party, which party shall remain, for the residue of said term, responsible for the rent and charges herein reserved, and shall be credited with such amounts only as shall be by the Lessor party actually realized after first deducting any brokerage charges and other ex-

penses that may have been incurred by reason of such re-letting; and that in case of the eviction of the Lessee party, or those claiming through or under the Lessee party, or in case of the termination of this lease, by reason of fire or other cause, the Lessor party may immediately recover of the Lessee party the pro rata rent up to such time, irrespective of the periods herein prescribed for the payment of rent; and, further, that no waiver of, or assent by the Lessor party to any breach of the covenants on the part of the Lessee party shall be deemed a waiver of any other or future breach whatsoever."

Other material facts are described in the opinion. By order of *Braley,* J., the suit was reserved for determination by the full court upon the pleadings and the agreed statement of facts.

*L. E. Flye,* for the plaintiff.

*S. M. Child,* for the defendant.

PIERCE, J. This case, reserved upon the bill, answer and agreed statement of facts, arises out of the following circumstances:

On January 7, 1920, the Cosmopolitan Trust Company was the tenant of premises owned by the plaintiff Towle, under two leases (of different parts of the same building) which had a little less than seven years to run. On that date it was agreed that said leases should expire on April 30, 1922, and thereafter occupancy of these and additional premises should be under a new lease with somewhat different terms. This agreement was pursuant to a vote of the trust company's directors and took the form of a sealed indorsement upon the old leases and the present execution of a new lease. The cancellations were to take effect April 30, 1922, and the new lease was to begin on May 1, 1922. The new lease is dated November 5, 1919. The plaintiff then went to the expense of changing tenancies to prepare for the taking effect of the new lease. The rents under the first two leases were upon annual bases, payable $1,666.66 and $125 per month respectively; an increase to $141.67 per month of the rent under the second lease was to take effect January 1, 1922; the rental under the new lease was $45,000 per year, payable $3,750 monthly.

On September 25, 1920, the defendant in his official capacity took charge of the trust company and continued in possession of the premises and paid the rent under the first two leases through December 31, 1921. On November 30, 1921, he gave the plaintiff written notice of his intent to quit on December 31, 1921. And on that date he vacated the premises and has paid no rent since.

On February 7, 1922, the plaintiff filed with the defendant a proof of claim, to the effect that he claimed the entire rent to the end of the respective terms under each of the three leases, amounting in all to $457,233.36; this was rejected by the defendant.

On February 11, 1922, the plaintiff brought an action at law in the Superior Court to recover from the trust company for breaches of its covenants in the three leases, and of the agreement whereby the first two were to be eventually replaced by the third lease; setting out as damages expenses of preparing for the third lease, loss of rentals accruing after December 31, 1921, and loss of the entire rental value of the premises for the remaining term of contract. A motion to dismiss (filed March 13, 1922) because the acts alleged as breaches were acts of the bank commissioner in his official capacity and not of the trust company, because an adequate and exclusive remedy was given by G. L. c. 167, §§ 22–31, and because the plaintiff's claim was not seasonably presented, G. L. c. 167, § 28, was denied.

. In June, 1922, the action at law was tried by a judge of the Superior Court without a jury, and evidence was admitted placing the loss of the plaintiff at a large sum; this included the total loss of some of the rentals and a partial loss of others, due to the impossibility of reletting at as high a figure as the original rents. September 7, 1922, the trial judge found for the plaintiff for $1,791.67, as the instalment of rent due February 1, 1922, with interest from that date.

Meanwhile, on August 15, 1922, a single justice of this court sitting in equity decreed that the last day for presenting claims upon funds of the trust company in the commissioner's hands be October 16, 1922; that no claimant should share in any distribution of such funds unless proof of claim

be made before that day; and that no suit to establish any rights to any such property should be brought after that date. The plaintiff had no notice of the pendency of the motion for such a decree except as and if he was given constructive notice by a certain publication. The commissioner, however, knew of the plaintiff's claim and of the then pending action at law to enforce it. Also, on November 8, 1922, a decree of this court authorized the commissioner to pay a dividend of ten per cent on all ordinary claims upon the commercial department of the trust company of which legal proof had been received.

In this state of affairs this bill in equity was brought praying for the establishment of the claim, whether it be properly for full damages for breach of the covenant down to the end of the leases, or in the alternative for accrued instalments of rent; praying that the proof of claim filed February 7, 1922, be declared to be a sufficient proof whichever construction be placed upon the plaintiff's rights; and for other relief appropriate to secure for him his proper share in the distribution of the trust company's assets. This bill was filed November 14, 1922. The plaintiff then waived his exceptions saved in the action at law; the defendant waived his appeal from the denial of his motion to dismiss therein; and judgment was entered in accordance with the finding.

On November 24, 1922, a supplemental bill was allowed to be filed adding the allegations of these facts. And on the same day there was also allowed an amendment to the bill, referring to the memorandum of findings of the judge of the Superior Court in the action at law, and alleging " The plaintiff accepts as true the findings of fact stated in said memorandum." Most of these findings are covered by or are consistent with the " Agreed Statement of Facts;" but the Superior Court judge stated that since the bringing of the action the plaintiff had apparently entered to repossess himself of at least a portion of the premises, while in the agreed statement of facts it is set forth that at no time has the plaintiff re-entered to determine his lease or repossess himself. The agreed statement, being deliberately made with full knowledge of the amendment and of this finding of fact, would seem to be controlling.

The defendant's answer sets up as defences that the plaintiff's claim was properly rejected as not being for a cause of action existing on September 25, 1920; that relief is barred by the decree of August 15, 1922; that suit was not brought within six months after service of notice of rejection of plaintiff's claim, G. L. c. 167, § 28; and that the lease dated November 5, 1919, was *ultra vires* of the trust company. This last defence was not argued and is therefore treated as waived.

No fixed and definite claim in the plaintiff ever existed before February 1, 1922, when for the first time rent fell due and was not paid. It is doubtful whether the taking of possession by the commissioner on September 25, 1920, constituted a breach of any conditions expressed in the leases and so furnished a ground for re-entry by the plaintiff; but any such right of re-entry was waived by accepting rent from the commissioner for a long period thereafter. When the rent due February 1, 1922, was not paid, there was a breach of condition; and the plaintiff was by the express terms of his leases entitled to re-enter without prejudice to other remedies for " arrears of rent or preceding breach of covenant;" or to re-let the premises, holding the lessee still responsible for the rent, and entitled to credit for the proceeds of the re-letting; or he might, of course, do nothing and rely upon the covenants for rent as the instalments became due. Had the first course been taken there was no provision for any right in the lessor to recover as a lump sum the difference between the covenanted rent and the true rental value; see *Cotting* v. *Hooper, Lewis & Co. Inc.* 220 Mass. 273; and no right to recover would have arisen except for the February 1, 1922, instalment, already accrued and payable. Under the second or third alternatives the only rights to recovery would arise as thereafter, from time to time, instalments of the rent became due and remained unpaid; and the rights would be to recover such instalments as due, diminished only by the proceeds of any re-letting. The agreed facts seem to show that the plaintiff did not re-enter, but did re-let so far as he was able to do so.

The instalments of rent were not in any sense a debt of

the lessee until they were actually due.   *Deane* v. *Caldwell,* 127 Mass. 242.   *Bowditch* v, *Raymond,* 146 Mass. 109. Prior thereto they were absolutely contingent as to their existence;  destruction of the building by fire, for example, might prevent their ever becoming payable.  See also *Bowditch* v. *Raymond, supra,* at page 115.  They were therefore not provable at the date when the commissioner took possession or for a long time thereafter.

The provision that any suits must be brought within six months after the rejection of claims, G. L. c. 167, § 28, shows conclusively that a claim cannot be provable while it is in question whether it will be actionable, until much more than six months after' a prompt rejection by the commissioner. The proof of claim filed February 7, 1922, was therefore certainly ineffective as to any⸴ instalments beyond that which accrued February 1, 1922.  This disposes of the defendant's objection that this suit was not brought until six months after the rejection of the' claim.   There are no facts before us as to the course taken respecting that instalment subsequent to the judgment rendered for the plaintiff in the action at law in the Superior Court, and we do not deal with it.

The judgment of the Superior Court, to which neither plaintiff nor defendant prosecuted his exceptions to this court, is conclusive upon the parties to the action that there had been no breach of the covenants of the several leases at the time when the commissioner took possession of the property of the defendant on September 25, 1920;  that the commissioner " was not the agent or representative of the bank;  that he was a public officer, whose duties are defined by law, and that while he could end his own occupancy when he saw fit, he was not authorized to terminate or destroy the lease, nor, by breaking its covenants, to impair its validity;  and that without an order or decree of a court (St. 1910, c. 399, § 4) he could, neither directly nor indirectly, deprive the bank or its creditors of leasehold property which plainly constituted a part of the assets of the bank;  and had not the power to surrender the lease against the will of the lessor.   There is no provision of law giving the commissioner

the power which the insolvency laws gave to the assignee of surrendering the term without the lessor's consent.   G. L. c. 216, § 33."

The judgment is also conclusive that no actual or contingent debt payable presently or *in futuro* was due or certainly to become due to the plaintiff as lessor on account of the covenants of the leases when the commissioner took possession of the property of the lessee.   The obligation of the trust company under the covenants to pay the rent as it fell due as matter of law was not discharged by the act of the commissioner in taking possession of the property or by any act of the commissioner in assuming control of the business of the trust company.   Nor could this obligation be discharged by an official act of the commissioner.   Notwithstanding the sequestration of the property of the trust company for application upon liquidation to the payment of its obligations, the lessor was not deprived thereby of any remedies given to him under the covenants in the lease which, in such cases, are afforded at law or in equity.   These remedies of course include actions at law to recover against the trust company the instalments of rent as they shall severally become due and payable.   Under the judgment of the Superior Court the plaintiff has recovered judgment for the instalment of rent due and payable February 1, 1922; and no reason is perceived why in an appropriate action he may not recover judgments for all future instalments of rent as they shall become due during the lifetime of the several leases.   No rights of third persons having intervened, the question is, whether these instalments as they became due should have been permitted to be proved in like manner as meritorious claims, which could have proved within the time prescribed in the notice for proof of claims, are allowed to be proved after the time limited for proof of claims, and subsequent to the authorization of the payment of a dividend upon claims seasonably proved. *Commissioner of Banks, petitioner, in re Cosmopolitan Trust Co.* 241 Mass. 346, 354.

We think claims which were neither actual nor more than contingent when the commissioner took possession of the property of the trust company, and claims which did not

exist to be proved within the time limited for proof of claims, fall outside any possible statutory right to share in the dividends ordered to be paid on claims which existed when the commissioner took possession of the trust company. *American Express Co.* v. *Cosmopolitan Trust Co.* 239 Mass. 249. *Gerold* v. *Cosmopolitan Trust Co.* 245 Mass. 259. It follows that the plaintiff may not prove his claim as a general creditor for the rents or balance of rents accrued prior to the date of the decree, and as such creditor may not prove as further rents accrue before final distribution.

*So ordered.*