[Civ. No. 7393.   Second Appellate District, Division One.—April 8, 1931.]

PACIFIC STATES CORPORATION (a Corporation), Appellant, v. A. A. ROSENSHINE, as Superintendent of Banks, etc., et al., Respondents.

Russell & Heid and Robert Brennan for Appellant.

Albert A. Rosenshine, *in pro. per.*, O'Melveny, Tuller & Myers, Louis W. Myers, Elbert A. Davis and J. H. Hoffman for Respondents.

Oscar C. Sattinger and Lissner & Gunter, *Amici Curiae.*

HOUSER, J.—The appeal herein is presented to this court from a judgment of dismissal of an action which, as to one cause of action set forth in the amended complaint therein, resulted from an order made by the trial court by which a demurrer interposed by defendants was sustained without leave to amend said cause of action; and as to each of two other alleged separate causes of action stated in said complaint, followed the failure of the plaintiff to amend the same after said demurrer thereto had been sustained by order of the trial court, with leave granted to the plaintiff to amend said cause of action within a time also fixed by said order. Since as to each cause of action attempted to be pleaded in the complaint a question of law arises which differs from that or those involved in either of the other causes of action in said complaint, it becomes necessary to consider separately herein the demurrer of defendants as separately applied to the respective causes of action.

In general, the entire action was founded upon the alleged repudiation of a lease of certain premises entered into between the plaintiff and the Pan-American Bank of California for a period of twenty-five years at a gross rental which varied at a sum between $120,000 and $180,000 per year. Although by no means a complete *résumé* of the first cause of action of the complaint herein, as far as is here material it appears that within a period of two or three years after said lease was executed, the defendant Rosenshine, as superintendent of banks of California, and defendant Ewing, acting in the capacity of a special deputy for said superintendent of banks, took possession of the lessee bank, its business and said leased premises for the purpose of liquidating and distributing the assets of said bank in accordance with the provisions of the Bank Act of

this state (Stats. 1909, p. 87, as variously amended), and so remained and was in possession of said bank's business at the time of the commencement of the action against said defendants. The complaint contained further averments intended to show an abandonment by the superintendent of banks and his deputy of the leased premises, together with the further allegation that ''defendants have stated and declared to plaintiff that they will not pay the balance of the rents now due, owing and unpaid pursuant to said lease and that they will not pay any rents in the future and that said defendants will continue to abandon said premises and will not occupy them in the future and that they will no longer be bound by the terms of said lease and that they will not conform to or comply with any of the terms, covenants or conditions in said lease on the part of the lessee; . . . '' Wherefore, by reason of the facts alleged in the first cause of action, the plaintiff demanded judgment against defendants for a sum in excess of $1,000,000.

The complaint contained no allegation of re-entry or reletting of the demised premises by the plaintiff.

The demurrer of the defendants to the said first cause of action, which was sustained by the trial court without leave to the plaintiff to amend the complaint as to said cause of action, was both general and special. It is considered necessary by this court to deal with the former specification only of such demurrer.

As the principal question to be determined, appellant propounds the following: '' . . . does a lessor have a mature claim for damages for breach of lease upon a repudiation thereof and an abandonment of the premises where default in the payments required by the lease has been made and where the lessee is a banking corporation going through the process of liquidation at the hands of the Superintendent of Banks under the State Bank Act?''

It seems to be conceded by appellant that ordinarily where a tenant abandons leased property and refuses to pay the rent reserved by the terms of the lease, in the absence of re-entry and reletting of the leased premises by the landlord for the remainder of the term of the lease, he cannot maintain an action for damages other than one covering a past-due installment of rent or other accrued damages. In other words, in such a situation the damages for which an

action may be maintained must represent either a liquidated or an agreed loss to the landlord, or such a loss as is capable of accurate admeasurement. But it is contended by appellant that, especially in circumstances such as are here present, a different rule should prevail; otherwise, because of the stringency placed upon the presentation of claims by the provisions of the Bank Act, particularly with reference to the limitations of time regarding notice of the claim itself, and the period of time within which an action may be maintained upon such claim, the landlord might, and probably would, eventually suffer a damage for which no practicable remedy would be available. According to the construction placed thereon by appellant, the following authorities sustain such view: *Minneapolis Baseball Co.* v. *City Bank,* 74 Minn. 98 [76 N. W. 1024]; *McGraw* v. *Union Trust Co.,* 135 Mich. 609 [98 N. W. 390]; *People* v. *St. Nicholas Bank,* 151 N. Y. 592 [45 N. E. 1129]; *In re Reading Iron Works,* 150 Pa. 369 [24 Atl. 617]; *People* v. *National Trust Co.,* 82 N. Y. 283; *Bolles* v. *Crescent Drug etc. Co.,* 53 N. J. Eq. 614 [32 Atl. 1061].

Undoubtedly each of such authorities in the main would seem to support the principle for which appellant contends; but on examination of the facts appertaining thereto, they will be found lacking to such an extent that, compared with those of the instant case, an exact parallel does not exist. In the case first cited (*Minneapolis Baseball Co.* v. *City Bank, supra*), although before the expiration of the term of the lease there involved the defendant bank had been declared insolvent, a receiver thereof appointed, and a claim for damages had been filed by the landlord, based on a difference between the rental required to be paid by the terms of the lease and the money collected by the lessor from other tenants after abandonment by the lessee of the leased premises;—the further pertinent facts, not present herein, appeared, to wit: The leased premises had been relet by the landlord for the entire balance of the term of the former lease, and, as appears in the opinion rendered therein, before bringing the action,

"*The lessor waited until the term fixed by the lease expired, and then filed a claim for the total rental, less a small sum paid by the receiver for a few days he was in possession after his appointment, and less amounts received from*

*tenants who occupied the premises, more or less, subsequent to the abandonment."*

A substantial difference in the facts thus appears between the cited and the instant case, in that in the former the loss suffered by the landlord was an ascertainable amount, while in the latter the loss, if any, which the landlord may suffer is conjectural in amount.

The facts in the second case to which attention has been directed (*McGraw* v. *Union Trust Co., supra*), likewise were lacking in essential particulars as far as an "all-fours" situation with the instant case is concerned. There the bank had been declared insolvent prior to the date of expiration of the lease; the breach of contract expressed by the provisions of the lease had occurred prior to such insolvency; and before the claim was filed and before the action was commenced the demised premises had been relet by the landlord for the entire balance of the term of the lease in question.

The latter fact also appeared in the case of *People* v. *St. Nicholas Bank, supra*.

The facts of the next case (*In re Reading Iron Works, supra*), also differ from those in the instant case, first, in that the liquidation of a bank was not there involved; secondly, in that by agreement by the respective parties to the lease in the circumstances there present the lessor was entitled to resume possession of the demised premises and relet them without affecting the rights afforded him by the terms of the lease; and, finally (according to the opinion of the court) the claim for which damages were sought did not arise from a breach of the lease itself, but rather arose from the violation by the lessee of the terms of an agreement regarding the proposed lease which was entered into before the lease in question was executed. At the outset of the opinion the court expressly stated that: *If the appellant's claim in this case was for rent to fall due in the future, . . . the action of the court below could not be successfully attacked.* In the distribution of a fund the general rule undoubtedly is that those only are entitled to share who have a definite demand against it, or a cause of action capable of adjustment and liquidation upon trial."

However, the case of *People* v. *National Trust Co., supra*, in a measure supports the contention of appellant. It is

there held that the dissolution of a corporation did not terminate a lease to which such corporation was a party, and consequently that the covenants of the lease remained obligatory upon a receiver of such corporation; in consequence of which the receiver was required to pay accrued rent reserved by the terms of the lease. No ruling was made as to whether damages for rent not accrued could be recovered.

And in *Bolles* v. *Crescent Drug etc. Co., supra,* it was held that where the defendant corporation had entered into a contract with the executors of an estate to the effect that the latter should at their own expense construct and operate a soda fountain in a storeroom owned by the corporation, and that in lieu of rent for a period of five years thereafter the executors should receive eighty-five per cent and the corporation fifteen per cent of the gross receipts from such operation, a subsequent decree of insolvency of the corporation did not effect the rescission of the contract.

Aside from the one case of *Minneapolis Baseball Co.* v. *City Bank, supra,* no case has been directed to the attention of this court which lays down the precise principle of law suggested by appellant; and as hereinbefore has been pointed out, the facts in the cited case were so divergent from those in the instant case that the language there employed may be regarded as carrying little persuasive force in circumstances such as are here presented for consideration. On the other hand, in many cases in other jurisdictions where the question here involved has arisen, the rule is unqualifiedly announced that damages claimed by a landlord from the estate of an insolvent corporation for future reserved rent of premises for the unexpired term of a lease between such parties are not ascertainable, are wholly contingent, and consequently are not recoverable.

The syllabus in the case of *Fidelity Safe Deposit & Trust Co.* v. *Armstrong,* 35 Fed. 567, which apparently is supported by the opinion therein, is as follows: "Where a national bank takes a lease for a long term, its insolvency and dissolution soon afterwards, and the appointment of a receiver, who refuses to take possession of the leased premises, do not entitle the lessor to damages out of the assets, the rent having been paid for the time during which the bank was in possession."

To the same effect is *Pennsylvania Steel Co.* v. *New York City Ry. Co.,* 189 Fed. 661, and *In re Service Appliance Co.,* 39 Fed. (2d) 632.

A similar ruling was made in *Providence Building Co.* v. *Atlantic National Bank,* 228 Fed. 814. In that case, however, a re-entry was made by the landlord. In the course of the opinion the following language occurs:

"Whether there will be any loss, and, if a loss, its amount, are in the nature of a thing too conjectural to permit a present liquidation of the liability. There is simply a contingency that there may be a claim. . . .

"It is evident that the declaration states no cause of action for a breach of the covenant of indemnity. On the contrary, it appears both that it is uncertain that there will be such liability, and that, if liability shall arise in the future, its amount is now wholly conjectural."

In each of the following cases the identical principle of law is held applicable in bankruptcy matters which affect individuals as distinguished from corporations: *In re Roth & Appel,* 181 Fed. 667 [31 L. R. A. (N. S.) 270]; *Watson* v. *Merrill,* 136 Fed. 359 [69 L. R. A. 719]; *Colman Co.* v. *Withoft,* 195 Fed. 250; *Slocum* v. *Soliday,* 183 Fed. 410; *In re Ells,* 98 Fed. 967.

In addition to such general declarations by the courts, but which would appear to bear strongly on the facts presented in the case at bar, the case of *Towle* v. *Commissioner of Banks,* decided by the Supreme Court of Massachusetts and reported in 246 Mass. 161 [140 N. E., at pages 747, 749], is practically parallel in its facts with those shown by the allegations of the complaint in the instant case. In considering the effect of the ruling in the cited authority, notice should be taken of the fact that the Massachusetts law with reference to the notice to be given by the bank commissioner to persons who may have claims against the bank, and the time limit within which an action may be maintained on a rejected claim, is identical in language with that of the Bank Act of this state. In the Massachusetts case it appeared that there, as here, the bank became a tenant under a long lease; that shortly thereafter the commissioner of banks took possession of the bank, its business and the premises occupied by it, for the purpose of liquidating and distributing its assets to the creditors of

the bank; that after remaining in possession of the demised premises for about one year, following a notice to the landlord of his intention to quit the premises on a specified date, the commissioner of banks vacated the leased premises. Thereafter and within the time provided by the Bank Act, and following the presentation to, and the rejection by, the commissioner of banks of a claim against the bank for the future rent which would accrue for the entire remainder of the term of the lease, the landlord commenced an action to recover on such claim. In deciding that the plaintiff was entitled to recover for such rent only as had accrued at the time the action was commenced, in part the court said:

"The installments of rent were not in any sense a debt of the lessee until they were actually due. . . . Prior thereto they were absolutely contingent as to their existence; destruction of the building by fire, for example, might prevent their ever becoming payable. . . . They were, therefore, not provable at the date when the commissioner took possession or for a long time thereafter.

"The provision that any suits must be brought within six months after the rejection of claims shows conclusively that a claim cannot be provable while it is in question whether it will be actionable, until much more than six months after a prompt rejection by the commissioner. The proof of claim filed February 7, 1922, was therefore certainly ineffective as to any installments beyond that which accrued February 1, 1922. . . .

"We think claims which were neither actual nor more than contingent when the commissioner took possession of the property of the trust company, and claims which did not exist to be proved within the time limited for proof of claims, fall outside any possible statutory right to share in the dividends ordered to be paid on claims which existed when the commissioner took possession of the trust company."

In the California case entitled *In re Bell*, 85 Cal. 119 [24 Pac. 633], the syllabus is as follows: "The fact that a lessee has abandoned the leased premises and repudiated the lease without lawful excuse, and without the consent of the lessor, prior to an adjudication of insolvency of the lessee,

does not render a claim for unliquidated damages for repudiation of the lease, beyond the rent of the premises up to the time of the insolvency, provable as a debt against the estate of the insolvent.''

In the case of *Phillips-Hollman, Inc.*, v. *Peerless Stages, Inc.*, 210 Cal. 253 [291 Pac. 178], which, on the default of the tenant to pay the rent of certain demised premises, involved the question of the right of a landlord after re-entry and reletting by him of such premises to maintain an action against the lessee for damages represented by the difference between the rent which, under the terms of the lease, would have accrued up to the time of the commencement of the action, and the amount for which, during such time, the premises had been relet, the Supreme Court laid down the following legal principles, to wit:

''The rule is well settled that where a lease has been repudiated by a tenant, and the premises abandoned, and there are no covenants in the lease to the contrary, the landlord has a choice of but two remedies:

''1. He may rest upon his contract and sue for each installment of rent as it falls due. *If this alternative is selected, obviously the action must be limited to accrued installments, and no recovery can be had for future installments,* because, the lease being still in existence, no obligation to pay the rent arises until each installment falls due.

''2. He may take possession of the premises, relet the same, and recover from the tenant any damages suffered thereby. Such damages will be the difference between the amount secured on the reletting and the amount provided for in the original lease. *If this alternative be selected,* in the absence of a covenant in the lease to the contrary, and perhaps where the landlord has relet for the balance of the entire term (which latter point we do not here decide), the law is well settled that *the landlord cannot recover in installments, but must bring his action at the expiration of the original term,* at which time the damages for the first time can be ascertained. (*Oliver* v. *Loydon,* 163 Cal. 124 [124 Pac. 731]; *Bradbury* v. *Higginson,* 162 Cal. 602 [123 Pac. 797]; *Hermitage Co.* v. *Levine,* 248 N. Y. 333 [59 A. L. R. 1015, 162 N. E. 97]. See, also, *Respini* v. *Porta,*

89 Cal. 464 [23 Am. St. Rep. 488, 26 Pac. 967].)'' See, also, *Treff* v. *Gulko,* (Cal. App.)* [297 Pac. 978].

█ It therefore appears that by the weight of authority no recovery of damages may be had in circumstances such as are presented in the instant case; from which it follows that, as to the first cause of action contained within the complaint herein, no error was committed by the trial court in sustaining the demurrer of defendants thereto without leave to the plaintiff to amend said first cause of action.

█ The second cause of action alleged in the complaint apparently was intended to be based upon the failure of the lessee during its occupancy of the demised premises ''to bear, pay or discharge'' certain taxes which were levied upon said premises in excess of the sum of $25,000 per year, as provided by the terms of the lease. As far as particularly concerns such cause of action, in effect the allegations were that by the terms of the lease the lessee agreed to pay to the plaintiff as ''rental'' (other than the regular monthly sums) all taxes levied or assessed upon the demised property in excess of $25,000 per annum; that during the years 1927, 1928 and 1929 such excess in the aggregate amounted to the sum of $34,679.50; ''and that defendants have failed, neglected and refused to pay said sum of $34,679.50 or any part thereof, and are in default therein and the whole thereof is due, owing and unpaid from defendants to plaintiff.''

The demurrer of defendant Rosenshine, among other things, contained the following specification of uncertainty in the pleading of the plaintiff, to wit: ''It cannot be ascertained from said complaint when such taxes, assessments, etc., became due or payable by said lessee or whether or not the same are yet due or payable by said lessee.''

An examination of the complaint discloses no direct allegation of any default by the *lessee* in the matter of its failure either ''to bear, pay or discharge'' the entire taxes which were levied against the demised premises, or, even assuming such taxes to have been paid by the plaintiff (which assumption, of course, should not be made), to reimburse it therefor for each excess of the sum of $25,000

---

*REPORTER'S NOTE.—A hearing was granted by the Supreme Court in the case of *Treff* v. *Gulko,* on May 14, 1931. (See (Cal.) 7 Pac. (2d) 697.)

per year. In that regard, the most that may be claimed for the complaint is that by its terms a claim which was presented by the plaintiff to defendants Rosenshine and Ewing on account of such excess taxes is made a part of the pleading; but such a reference was clearly insufficient as an allegation in the complaint of nonpayment of such taxes by the *lessee*. (21 Cal. Jur. 45; *People* v. *Reid*, 195 Cal. 249, 260 [36 A. L. R. 1435, 232 Pac. 457].) Moreover, the direct allegation by the plaintiff "that *defendants* (Rosenshine and Ewing) have failed, neglected and refused to pay said sum of $34,679:50 or any part thereof", etc., is not the equivalent of an allegation that the *lessee bank* did not "bear, pay or discharge" the taxes in accordance with the provisions of the lease.

Although the third cause of action of the complaint purports to be founded upon an indebtedness of the lessee and defendants Rosenshine and Ewing on account of electricity and janitor supplies alleged to have been furnished by the plaintiff to said lessee and said defendants at their special instance and request, the complaint contains no allegation that prior to the commencement of the action the *lessee* did not pay the same; the only allegation in that regard being "that *defendants* (Rosenshine and Ewing) have failed, neglected and refused to pay said sum of $320.86 or any part thereof, and the whole thereof is due, owing and unpaid from the *defendants* to the plaintiff."

It is clear that an allegation that no payment, either in whole or in part, of the alleged indebtedness was made by defendants Rosenshine and Ewing would not amount to an allegation (necessary to the statement of a cause of action) that the *lessee* had not made payment either in part or in full liquidation of such indebtedness. With reference to a similar pleading, in *Hawley Bros. etc. Co.* v. *Brownstone*, 123 Cal. 643, 647 [56 Pac. 468, 469], it is said:

"The allegation that the 'defendant' has not paid said notes, *et cetera*, is not an allegation as to both defendants; *non constat* but that one of them did pay them."

From the statement of the facts in the case of *Brown* v. *Orr*, 29 Cal. 120, it appears that a man and his wife executed a promissory note; that thereafter the man died without the note having been previously paid by either him or

his wife; that the owner of the note brought an action thereon against the wife and her two infant children. Regarding the nonpayment of the note, the allegation of the complaint was "that although long since due and payable, the *defendants* have hitherto failed and refused to pay the same or any part thereof, though often requested". A demurrer to the complaint was sustained and, the plaintiff having declined to amend his pleading, judgment was entered for the defendants. On appeal from the judgment, in passing upon the sufficiency of the allegations in question, in part the Supreme Court said: " . . . It is simply the note of her (the wife's) deceased husband, William H. Orr, and against him no breach of the contract declared on is alleged. The allegation is 'that the *defendants* have failed to pay', not that William H. Orr in his lifetime failed, etc. A breach of the contract by the party bound to perform is an essential part of the cause of action, and must be alleged in the complaint. (1 Chitty Pl. 332.) *Non constat,* but that William H. Orr may have paid the note in his lifetime from all that appears in the complaint. . . . "

In the case of *Wise* v. *Hogan,* 77 Cal. 184, 188 [19 Pac. 278], the facts were that after a man had executed his promissory note he died without previously having paid the same. On appeal from the judgment in an action brought on said note against the administrator of the estate of the maker of the note, it was clearly indicated by the Supreme Court that in order to state a cause of action the complaint should contain an appropriate allegation to the effect that the maker of the note had failed to pay it during his lifetime, as well as an allegation of presentment of a claim of indebtedness to, and its rejection by, the administrator of the estate.

As to each of the second and the third causes of action of plaintiff's complaint in the instant case, the demurrer of defendants contained several specifications of uncertainty, ambiguity, etc.; but since it would seem clear that the demurrer was properly sustained as to each of such causes of action as to at least one point to which reference has been had herein, it becomes unnecessary to consider either or any of such other specifications.

It follows that the judgment herein should be affirmed. It is so ordered.

Conrey, P. J., and York, J., concurred.

A petition for a rehearing of this cause was denied by the District Court of Appeal on May 8, 1931, and a petition by appellant to have the cause heard in the Supreme Court, after judgment in the District Court of Appeal, was denied by the Supreme Court on June 4, 1931.