Adolph Kroch v. B. G. Operating Company et al. Barney Gisnet et al., Appellants, v. B. G. Operating Company et al., Appellees.

Gen. No. 38,559.

Opinion filed July 3, 1936.

JOSEPH & BURR, of Chicago, for appellants; MAURICE E. BURR, of counsel.

MAX M. KORSHAK, of Chicago, for certain appellee; LESTER R. KORSHAK, of Chicago, of counsel.

MR. JUSTICE FRIEND delivered the opinion of the court.

This is an appeal from an order of the superior court allowing the claim of Adolph Kroch in the sum of $143,266.18, and the claim of Mary Collins and Sadie Bossingham in the sum of $19,467.95, as general creditors of a receivership estate.

January 8, 1932, a creditors' bill was filed against the B. G. Operating Company praying for the dissolution of the corporation and the distribution pro rata of its assets to creditors of the estate. January 11, 1932, a receiver was appointed, and thereafter an order was entered by the court requiring all creditors to file their claims on or before February 29, 1932. Among the claims filed was that of Adolph Kroch and of Mary Collins and Sadie Bossingham. Kroch's claim was for $229,399.33, and was based upon a lease for a store located at 208 North Michigan avenue, Chicago, made and entered into on May 25, 1928, and expiring March 31, 1946. All the monthly rentals due under the lease had been paid by the B. G. Operating Company up to January, 1932, and there had become due to the lessor (claimant Adolph Kroch) on January 1, 1932, the sum of $1,083.34 for the current month. This claim was reduced to judgment and was included in the amount claimed by Kroch against the receivership estate. The balance of Kroch's claim represented the entire rental provided for in the lease up to March 31, 1946, aggregating $229,399.33.

The claim of Mary Collins and Sadie Bossingham was based upon a lease with the B. G. Operating Com-

pany for the store premises located at 313 North Chicago street, Joliet, Illinois, executed September 25, 1929, and expiring October 15, 1934. The monthly rentals due under that lease were paid by the B. G. Operating Company up to January 1, 1932. When the receiver was appointed in this proceeding there was due only the rental for January, 1932, $216.95 for water bills which had accrued since November, 1928, and $126.95 for repairs made in August, 1931, aggregating $987.95. The claim was filed and allowed in the sum of $19,467.95, the difference representing rent for the balance of the term, subsequent to January, 1932.

It is first urged that in a proceeding based on a creditors' bill, praying for the dissolution of a corporation and the distribution of its assets to creditors, a claim for rent accruing subsequent to the appointment of the receiver and for the entire unexpired term of the lease is not provable in the receivership estate. It is a well established rule that a covenant to pay rent does not create a debt until the time stipulated for payment has arrived. It was so held in *In re Roth & Appel,* 181 Fed. 667, where the court said (p. 669):

"Rent is a sum stipulated to be paid for the use and enjoyment of land. The occupation of the land is the consideration for the rent. If the right to occupy terminate, the obligation to pay ceases. *Consequently, a covenant to pay rent creates no debt until the time stipulated for the payment arrives.* (Italics ours.) The lessee may be evicted by title paramount or by acts of the lessor. The destruction or disrepair of the premises may, according to certain statutory provisions, justify the lessee in abandoning them. The lessee may quit the premises with the lessor's consent. The lessee may assign his term with the approval of the lessor, so as to relieve himself from further obligation upon the lease. In all these cases the lessee is discharged from his covenant to pay rent. The time

for payment never arrives. The rent never becomes due. It is not a case of *debitum in praesenti solvendum in futuro*. On the contrary, the obligation upon the rent covenant is altogether contingent.''

In *Towle v. Commissioner of Banks*, 246 Mass. 161, it was said (p. 167):

''The installments of rent were not in any sense a debt of the lessee until they were actually due. . . . They were therefore not provable at the date when the commissioner took possession or for a long time thereafter.''

In Tiffany on Landlord and Tenant (1910) vol. 1, sec. 166, the author says (p. 1010):

''The obligation of the tenant under a lease to make payments of rent as they become due does not constitute a present debt to be paid in the future. 'Although there be a lease, which may result in a claim for rent, which will constitute a debt, yet no debt accrues until enjoyment (of the land) has been had.' The obligation to pay rent is contingent upon the lessee's continued enjoyment of the land, . . .''

In *Chicago Title & Trust Co. v. Corporation of the Fine Arts Building*, 288 Ill. 142, it was held that a claim for future rent against a decedent's estate is contingent and not a present provable claim. The court there propounded the inquiry, ''Is this claim for the rentals covering the balance of the term a contingent claim?'' and answered it by saying ''We are of the opinion that it is. There are different contingencies in a lease of this character, the happening of which is not within the control of either party to it, which may defeat all right to recover rents. . . .''

To the same effect are the following decisions: *Pacific States Corp. v. Rosenshine*, 113 Cal. App. 266, 298 Pac. 155; *Wilder v. Peabody*, 37 Minn. 248; and *Stockton v. Mechanics' & Laborers' Sav. Bank*, 32 N. J. Eq. 163.

In their brief and argument counsel for claimants concede this proposition of law, but they counter by saying "we have established the fact that the appellee has abandoned and surrendered the premises, and a liability was created" and "our claim is for damages for a definite breach of contract."

It is pointed out that proof was offered at the hearing tending to show that Adolph Kroch sustained a definite money damage by reason of the admitted breach of the lease. This proof consisted of a computation of the rent accruing subsequent to the appointment of the receiver and for the entire unexpired term of the lease, and deducting therefrom the depreciation in the rental value of the demised premises during the term. The net result was $143,266.18 and claimants' counsel argue that this represents damages for breach of the covenants of the lease and not for future rents. From an examination of the record it appears to us that this theory is an afterthought. The claim itself, the order entered by the court on the claim, and the proceedings had before the master in chancery, where the claim was heard, seem to proceed upon the theory that the claim was for future rents and not for damages. Kroch's claim was filed for $229,399.33, after allowing all payments, deductions and set-offs, and is predicated upon a certain store lease covering a term commencing August 10, 1928, and expiring March 1, 1946. The lease called for graduated monthly instalments, beginning with payments of $783.42, and increasing to $1,500. The sum provided for in the lease from January, 1932, to the expiration of the term, month for month, equals exactly the amount of Kroch's claim. It therefore seems quite apparent that it was Kroch's own theory to claim the full amount of the rent to accrue in the future and not for damages for breach of the lease. Moreover, the order appealed from allowing Kroch's claim was for rent and spe-

cifically states ''that the said Adolph Kroch is entitled to a finding herein for unpaid installments of rent.'' The master made no finding, nor is there any statement in the court's order, indicating that the amount allowed Kroch is for damages for breach of the covenants of the lease. Having, therefore, proceeded upon the theory that his claim was for unpaid instalments of rent, Kroch cannot here for the first time urge that the court ought to sustain the allowance of his claim for damages based on an anticipatory breach, and since Kroch's counsel admit that ''the authorities cited and arguments made (by appellants) would be in point had our claim been for rents allowed under the lease which expired in 1946,'' and that ''if Adolph Kroch had filed his claim for rent for the balance due under the lease, appellants' cases and arguments would be in point,'' we think it follows that the allowance of the claim for the amount of $143,266.18 was clearly erroneous. The claim of Mary Collins and Sadie Bossingham was likewise based on unpaid instalments of rent, and the same argument and conclusion is applicable to that claim.

The conclusion thus reached would in our opinion be sufficient to justify a reversal of the order of the superior court allowing these two claims, but counsel's earnest insistence that the superior court was fully warranted in allowing both claims upon the theory of an anticipatory breach merits consideration. We have carefully noted the argument employed by claimants' counsel to sustain their contention. We think they lose sight of the distinction usually made between damages awarded for anticipatory breach of executory contracts where goods and merchandise are delivered to be paid for in future instalments, and damages arising out of the anticipatory breach of leaseholds. The doctrine of anticipatory breach, which permits a party to an executory contract to recover for

damages at once where the other party repudiates his contract or disables himself from performing before the time for performance, was not part of the early common law, and was first recognized in England in the year 1853. (*Hochester v. DeLaTour,* 2 Ellis & Blackburn, 2 B. 678, 6 Eng. Rul. Cas. 576.) It was later adopted by most other jurisdictions in this country, but never extended generally to breaches of leases. While the courts of some States have allowed -damages for anticipatory breach of leases, the current weight of authority, and the law in this State, is clearly to the contrary. The reason for the distinction between ordinary executory contracts and leaseholds is pointed out in a number of decisions cited by appellants. In *In re McAllister-Mohler Co.,* 46 F. (2d) 91, the court denied a claim for future rents, and in pointing out why the doctrine of anticipatory breach cannot be applicable to leases said (pp. 94, 95):

"This leads to the natural inquiry as to why this rule, which is peculiar to leases, obtains, and the answer would seem to be that a claim for damages for the anticipatory breach of a covenant to pay rent is both illogical and contradictory.

"As is stated by our own Circuit Court of Appeals in the case of *In re Neff,* 157 F. page 57, 62, 28 L. R. A. (N. S.) 349: 'The creditor by offering to file his claim [for anticipatory breach of contract] manifests his election to treat the contract as broken.' And of course that means the whole contract including the lease, which in turn is equivalent to ejecting the tenant. As a result thereof there can be no claim for future rent.

" . . .

"To again quote Judge Sanborn: The landlord may repossess himself of the premises or permit the lessee to continue in possession of the property and enforce the collection of the rents, but he cannot do both. A

damage claim for an anticipatory breach of a lease clearly contemplates the landlord 'doing both.' He is taking back his property and at the same time seeking to recover future rentals by filing a claim against the tenants' estate.

"...

"*My conclusion therefore is that at common law the doctrine of anticipatory breach of contract does not apply to leaseholds, . . .*"

The distinction between an ordinary executory contract and a lease was again recognized in *Central Trust Co. of Illinois v. Chicago Auditorium Ass'n,* 240 U. S. 581, where Mr. Justice Pitney, after citing numerous cases dealing with landlord and tenant relationships, said (p. 590):

"Cases of the latter class are distinguisable because of the 'diversity between duties which touch the realty, and the mere personalty.' "

In referring to the foregoing decision, the court in *In re Schulte-United, Inc.,* 2 Fed. Supp. 285, said (p. 286):

"The distinction which the court seemed to have in mind, therefore, was not between promises to pay rent and other promises, but one between leases of real estate and other types of contracts."

Counsel for appellants cite Williston on Contracts, vol. 3, sec. 1329, as pointing out the inapplicability of the doctrine of anticipatory breach of leases, as follows (p. 2382):

"As independent promises in a bilateral contract are in effect separate unilateral obligations, a rule which forbids enforcement of anticipatory repudiation as a breach in unilateral contracts also forbids such treatment in case of an independent obligation in a bilateral contract. Therefore, when a tenant repudiates a lease, the landlord cannot at once sue for future rent."

It is thus argued that there are several reasons supporting the majority of the cases holding that the doctrine of anticipatory breach does not apply to a lease, the first being the historical basis, namely, that a covenant to pay rent does not create a debt until the time stipulated for payment arrives. Defendants' counsel point out that the allowance of a claim for damages by reason of a breach of a lease would create an "unexplainable paradox; it would be tantamount to saying, on the one hand, that a lessor is not entitled to his rent until the day it is due; but on the other hand, where a breach occurs, he is entitled to all the rent at once, regardless of the time stipulated for payment." Another reason is that advanced in *In re McAllister-Mohler Co.*, 46 F. (2d) 91, which holds that upon breach of a lease a landlord may repossess himself of the premises or permit the lessee to continue in possession of the property and enforce the collection of the rents, but he cannot do both, and since a damage claim for an anticipatory breach of a lease contemplates the landlord doing both, such claim will not be allowed. The third reason is that advanced by Prof. Williston, as appears from the quotation hereinbefore cited.

While, as heretofore stated, the contention made by claimants is not without support, we think that both logic and the clear weight of authority supports the conclusion that the doctrine of anticipatory breach of contracts does not apply to leaseholds. For this additional reason we think the superior court erred in including the unpaid instalments of rent, either as such or as damages for breach of the lease. Accordingly, the order of the superior court will be reversed, and since there is no dispute as to the respective sums that were due when the receiver was appointed in January, 1932, the claims will here be allowed in the following amounts:

The claim of Mary Collins and Sadie Bossingham in the sum of $987.95; the claim of Adolph Kroch in the sum of $1,083.34.

*The order of the superior court reversed; claim of Collins and Bossingham allowed in the sum of $987.95; claim of Kroch allowed for $1,083.34.*

SULLIVAN, P. J., and SCANLAN, J., concur.