People of the State of Illinois ex rel. Oscar Nelson, Plaintiff, v. West Town State Bank, Defendant. Margaret O'Neil Lawson et al., Appellants, v. Charles H. Albers, Appellee.

Gen. No. 40,287.

Opinion filed March 29, 1939. Rehearing denied April 12, 1939.

John O. Wagner, of Chicago, for appellants.

William J. Flaherty, of Chicago, for appellee; John F. Cashen, Jr. and James Conger, both of Chicago, of counsel.

Mr. Presiding Justice Denis E. Sullivan delivered the opinion of the court.

This is an appeal from a decree entered in the circuit court on the intervening petition of Margaret O'Neil Lawson in reference to her claim as such petitioner. A claim was filed by her against the insolvent estate of the West Town State Bank. Petitioners' claim was referred to a master who found that petitioners were the owners of improved property on West Madison street and had entered into a lease with the West Town State Bank, on April 9, 1919, for a period of 45 years; that the lease terminated April 30, 1964.

It appears from the petition and evidence that the lessee agreed to pay all taxes, special assessments, insurance and all other charges that might be placed against the said premises, and in addition thereto, agreed to pay the lessor a rental of $1,600 per year over and above any and all charges against the property or cost of operation by virtue of said lease, so the lessor would have a net profit each year from said

premises of $1,600; that the lease provided that the lessee was to remodel the building then on the premises and the building was to be complete in every detail whenever the lessee vacated the premises, and the lease also provided that the lessee would pay 7 per cent interest on any moneys expended by the lessor that should have been paid by the lessee; that the lease further provided that the lessee would pay the lessor's attorney's fees if same were necessary to enforce any clause of the lease.

The petition and answer were referred by the court to a master in chancery who found that the bank had consummated the lease by taking possession of the premises and by virtue thereof had remodeled the premises in question and also occupied adjoining premises and that the bank had cross-connected the two properties so that one water system, heating system and light system operated for the benefit of the two buildings and that thereafter when the bank failed and abandoned the premises it was necessary for the lessor of the building in question to have the light, heat and water disconnected from the adjoining building.

It further appears that on July 21, 1931, Thomas B. Roberts was appointed receiver of the West Town State Bank which had ceased doing business. The receiver continued to occupy the premises and paid the rent until December 31, 1931.

It further appears that on December 1, 1931, an order was entered by the court on the petition of the receiver to disaffirm the lease for the property in question. This order was entered without notice to petitioner. The lessor contested the said petition, after hearing of its entry, but the court entered an order over the protest of the lessor that the receiver of the West Town State Bank disaffirm the said lease, which disaffirmance was to be effective December 31, 1931. Thereupon said receiver paid the rents, taxes and spe-

cial assessments, etc., up to and including December 31, 1931.

The lessor and petitioners, appellants here, then took possession of the premises involved on January 1, 1932. The master further found that on January 1, 1932, and subsequent thereto the lessor-petitioner used all possible diligence to rent the premises to the best advantage and paid all costs to operate the property; that after allowing all credits for receipts of rents the lessor suffered a loss from January 1, 1932 to December 31, 1936, in the sum of $7,846.85, and, in addition thereto the sum of $250, paid as a commission to a real estate man for obtaining a lease for a store.

The master further found that from January 1, 1932, to December 31, 1936, the cost to the lessor in connection with the premises, such as taxes, maintenance, etc. amount to $1,374, per year; that the gross receipts per year from said property was $1,920, leaving a net difference of $546 per year.

The master further found that the lessor was entitled to a net rent per year of $1,600 and that the lessee was to pay all costs of operating and maintaining the building and to pay all taxes or other charges against the building; that therefore the lessor suffered a net loss per year of the difference between $546 per year realized and the $1,600 the lessor should have received, or a net loss from January 1, 1932 to December 31, 1936, of $1,054 per year, which makes a net total for this period of $7,846.85.

The proof of loss tendered by petitioners and not denied by the respondent bank is that the loss or damages each year amounts to $1,054, which for the remaining 27 years of the lease, being the period from December 31, 1936 to April 30, 1964, would amount to $28,458.

The master further found that the $708.66 claimed as damages for altering the building could not be re-

covered because no claim was set forth in the petition filed by the petitioner.

The claimant's theory of the case is that the rents for the period from January 1, 1932, to December 31, 1936, are for damages suffered and sustained in the past and are in no way anticipatory damages; that the rents for the period from 1936 to 1964 presents an entirely separate and distinct question of law and that the law on this question is also in favor of the petitioner.

Respondent's theory of the case is that the petitioner is not entitled to damages because the lease makes no provision for damages in case of an abandonment of the premises by the lessee.

The petitioner divided her claim into three divisions, namely,—first, for $708.66 damages paid out by her to alter the building remodeled by the West Town State Bank. As to this claim the master found that the petitioner is not entitled to recover because no such claim is set forth in the petition filed herein by petitioner.

The second division of petitioner's claim is for damages from the termination of the lease to December 31, 1936, in the sum of $8,096.85.

The third division is for anticipatory damages for the balance of the term in the sum of $28,458, based upon the experience of the first five years.

The master's report came before the court, and the objections were made exceptions thereto, and the court after full argument, entered a decree on the intervening petition of Margaret O'Neil Lawson. In substance the decree allowed some of the exceptions and overruled others, the effect of which was that:

"4. That petitioners should be, and they hereby are, allowed a claim against said West Town State Bank in the amount of $708.66, as their damages for the moneys paid out by them to alter the building in question and certain fixtures affixed thereto after the

surrender of said building by said Receiver in order to put the same in a tenantable condition.

"5. That said petitioners should be, and they hereby are, allowed a further claim against said West Town State Bank in the amount of $200.00 as reimbursement for the costs and attorney's fees expended and incurred by them in enforcing the covenants, agreements, terms and provisions of the lease which is the subject matter of this suit.

"6. That said petitioners should be, and they hereby are, allowed a further claim against said West Town State Bank in the amount of $250.00 as reimbursement for the commission paid to a real estate agent for his services in obtaining a lessee for the premises in question.

"7. That all other claims and liabilities asserted by said original petition and by said first amended petition and by said second amended petition, or any one of them, are hereby denied, and said West Town State Bank and the respondent, Charles H. Albers, Receiver of West Town State Bank, are under no liability to petitioners therefor.

"8. That the claims for $708.66, for $200.00 and $250.00, hereinabove allowed, are general claims against the estate of said bank and are entitled to no preference or priority over other general claims against estate of said bank and should be paid by said Receiver pro rata in due course of administration, out of the assets of said bank applicable to the payment of claims of like kind and character.

"9. That the costs of this proceeding, incurred to date, except the fees and charges of said Master in Chancery, shall be borne by petitioners; that two-thirds (2/3) of the fees and charges of said Master in Chancery, Leonard C. Reid, which includes court reporter fees, shall be paid by the petitioners herein, and one-third (1/3) of said fees and charges shall be paid forthwith by the respondent, Charles H. Albers,

Receiver of West Town State Bank, out of the assets of the estate of West Town State Bank.''

The primary question here to be determined is whether or not anticipatory damages may be recovered where the lessee abandons the premises. To determine this question is not without its difficulties. Different courts in different jurisdictions have taken various views relative to the subject as has been done in this State.

In *Smith v. Goodman,* 149 Ill. 75, the Supreme Court held that a lessor has a valid claim for damages in case of abandonment of the lease by the lessee which may be proven against said estate. In that case, Meyer & Sons Company, a corporation, made a general assignment for the benefit of creditors. About three months prior thereto, said corporation became the lessee in a lease for a term beginning September 1, 1889, and ended April 30, 1892. When the assignment was made, the assignee took possession and paid rent to April 30, 1890, at which time the assignee vacated the premises, which was exactly two years prior to the expiration of the term specified in the lease. Shortly thereafter the assignee vacated the premises and the lessor filed a petition asking that the lessor have leave to re-rent the premises and that the assignee pay the difference between the amount specified in the lease and any deficiency which might arise from the reletting.

In the *Smith* case, *supra,* the court entered an order to prevent unnecessary loss to the estate, in which order it directed that both petitioner and assignee should secure a tenant for the remainder of the term at the highest and best possible rent. This, without prejudice to the rights of either party.

On October 16, 1890, almost five months after said order of May 28, 1890, just referred to, was entered, on petition of the assignee, the court ordered that the premises be rented from October 6, 1890 to April 30,

1891, at $125. Some misunderstanding evidently arose, because later the lessor, under order of court, rented the premises from February 1, to May 1, 1891, at $125 per month and from May 1, 1891 to April 30, 1892, the remainder of the term, at $250 per month.

On February 16, 1891, lessor filed a supplemental petition setting forth that lessor had received no rent from May 1, 1890, the day after the assignee had vacated the premises, to February 1, 1891, when the new lease just mentioned, began. The petition asked for $2,250, being $250 per month from May 1, 1890 to February 1, 1891, and the sum of $375, being the difference between the rent called for by the new lease, from February 1, to May 1, 1891, at $125 per month, as above stated, and the rent reserved in the old lease. The lower court dismissed the petition and the supplemental petition, but that ruling was briefly reversed by the Supreme Court, which held:

"Where a lessee makes a general assignment for the benefit of creditors, any damages resulting to the lessor for a breach of the covenants of the lessee will become a claim against the assignee, which may be proven against the estate the same as other claims, but such claims will not be entitled to priority over other claims."

The difference between the *Smith-Goodman* case and the case at bar is that in the former case at the time of the hearing a lease had been made at a certain figure for the balance of the term and that the measure of damages was provided for in the lease, which was the difference between the amount received upon a reletting and the rent reserved, whereas, in the case at bar leases had been made for a period of five years. In the said *Smith-Goodman* case, the lease provided for a shorter term. In the instant case no stipulation appears in the lease as to what amount would be considered as damages upon abandonment of the lease as was set forth in the *Smith* case. However, we do

not think such omission should prevent recovery of damages, if the same were actually suffered.

In making his report the master relied upon the case of *Kroch v. B. G. Operating Co.*, 286 Ill. App. 301, which was a case for damages upon the abandonment of a long term lease. The court in substance sustained the position of the objector in that case and stated that the claim was for future rents and not for damages. The court found that the lease in the *Kroch* case called for graduated monthly instalments; that the sum provided for in that lease to the expiration of the term equaled exactly the amount of Kroch's claim; that it was Kroch's own theory to claim the full amount of the rent to accrue in the future and not for damages for breach of the lease.

The court further found in the *Kroch* case that the master made no finding, nor is there any statement in the court's order, indicating that the amount allowed Kroch is for damages for breach of the covenants of the lease; also, the court stated that counsel's earnest insistence that the superior court was fully warranted in allowing both claims upon the theory of an anticipatory breach merits consideration, holding that the doctrine of anticipatory breach of contract does not apply to leaseholds.

In the instant case the evidence shows the lease is a contract partly executed and partly executory. Damages have resulted and in the future further damage may or may not result, according to the uncertainties of the future. We think the damages sustained are principally a question of proof. The damages which had been sustained up to the time of the hearing can be proven with certainty. What the future damages may be is very speculative.

In the case of *Filene's Sons Co. v. Weed*, 245 U. S. 597, a case that came before that court on a writ of certiorari upon a bill for instructions filed by the re-

ceivers of William S. Butler & Company, incorporated, the receivers were appointed upon the prayer of a creditor, assented to by the corporation, in a bill brought for continuing the business until the assets could be applied in satisfaction of the company's debts. Instructions were asked as to the amount to be paid to the petitioner, Wm. Filene's Sons & Company, under a lease of the premises that William S. Butler & Company occupied. The lease covered five parcels of land held by the petitioner, also as lessee, and ran for the terms, less one day, of the respective original leases, which expired at different dates, from December 30, 1917, to February 28, 1921. It provided for a re-entry in case of a failure to perform any covenant, of bankruptcy, etc., or of a receiver being appointed and not discharged within 90 days. These proceedings were begun on November 7, 1912. On December 5, 1912, the receiver elected not to assume the lease and left the rent due December 1, unpaid; on December 9, the petitioner re-entered in pursuance of leave granted by the court, and on December 17, made demand upon the receiver for the sum that it alleged to be due. The receiver filed a petition for instructions on April 7, 1913. On September 30, 1913, the petitioner filed a formal claim, the time for proving claims not having expired.

The circuit court of appeals seems to have considered also that the filing of the bill had the same effect as a petition in bankruptcy in stopping claims that like this were not provable at that date.

Continuing in the *Filene* case, the court said:

"We are driven to different conclusions. In the first place, whether a letter showing that the payment of $20,000 a year was a substitute for a bonus of $340,000 was·admissible or not, *United States v. Bethlehem Steel Co.*, 205 U. S. 105, 120, we are of opinion that on the face of the lease and the figures it was dealt

with as a separate item and as the inducing consideration for the sublease, the right to the whole of which was earned when the sublease was made. The summary of the clauses referring to it that we have given shows that the whole amount was to be paid in any event, whether the overleases were cancelled, or a part of the rent was abated, or the leases were terminated, as well as if they ran their full course. It is true that in the reddendum the words 'as rental' might be construed to embrace the later clause 'together with a further sum of twenty thousand dollars,' but the sentence does not compel that construction and the dominant intent and obvious fact seems to us to override any argument upon that ground. See *Cox v. Harper,* [1910], 1 Ch. 480. Rent issues from the land, is not due until the rent day, and is due in respect of the enjoyment of the premises left. The twenty thousand dollars a year was to be paid whether the premises were enjoyed or not, upon a personal covenant that created a present debt, with no contingency except those possibly and lawfully accelerating the time in which it was to be paid.

"We perceive no ground that would justify the rejection of the petitioner's proof for the whole sum subject to the discount agreed. Certainly the fact that the termination of the lease happened after the filing of the bill has no such effect, although the sum was not presently payable until then. When a statutory system is administered the only question for the Courts is what the statutes prescribe. But when the Courts without statute take possession of all the assets of a corporation under a bill like the present and so make it impossible to collect debts except from the Court's hands, they have no warrant for excluding creditors, or for introducing supposed equities other than those determined by the contracts that the debtor was content to make and the creditors to accept. In order to

make a distribution possible they must of necessity limit the time for the proof of claims. But they have no authority to give to the filing of the bill the effect of the filing of a petition in bankruptcy so as to exclude any previously made and lawful claim that matures within a reasonable time before distribution can be made. *Pennsylvania Steel Co. v. New York City Ry. Co.,* 198 Fed. 721, 740, 741. Of course it does not matter that the claim was perfected by the petitioner's act, after a default in the rent. The receivers would not, and Butler & Company could not pay it, so that all agree that the petitioner's course was the prudent and only possible course to take, as it was the course that was contemplated by the covenant in the lease. *Wilder v. McDonald,* 63 Ohio St. 383, 397.

. . .

"The rest of the claim is for damages ultra the twenty thousand dollars a year—the difference between the rental value at the date of entry and the rent reserved, less the amount received under the twenty thousand dollar clause. This also was contracted for and we see no reason why it should not be paid. The contract was not that all the rent for the term should become presently due, it was not for rent at all, but was a personal covenant that liquidated the damages upon a footing that was familiar and fair. [Citing many cases]. The claim divides itself into two items: one from January 1, 1913, until April 1, 1913, when the whole premises were relet, put by the master at $39,829.80; the other from April 1, 1913, to the end of the term, put at $34,433.47. The other disputed item for expenses of reletting is disallowed."

As before stated, we do not see how in a case of this kind an allowance can be made in the present settlement of assets of the bank of amounts to become due in the future, and we think the language used in the case

from which we have just quoted, is applicable, wherein the court said: *"In order to make a distribution possible they must of necessity limit the time for the proof of claims.* But they have no authority to give to the filing of the bill the effect of the filing of a petition in bankruptcy so as to exclude any previously made and lawful claim that matures within a reasonable time before distribution can be made."

We think it would be unreasonable to postpone the final distribution in this case for over 30 years in order to find out how much would be coming to all the claimants. We are quite convinced that such a postponement would result in confusion and possible injustice. .

In the instant case we think the trial court should have allowed all damages proven up to and including the time of hearing, and provided they should be paid in the order of distribution. Future damages, if any, because of their uncertainty and lack of proof, must await their accrual. In the meantime a distribution of the assets of the receivership estate would be justified.

For the reasons herein given the decree of the circuit court is reversed and the cause is remanded with directions to enter a decree in harmony with the views herein expressed.

*Decree reversed and cause remanded with directions.*

HEBEL, J., concurs, and BURKE, J., takes no part.