MICHAEL BRENNAN, Respondent, *v.* THE CITY OF NEW YORK, Appellant.

*Holding over after the expiration of a term — the unintentional failure to deliver up keys and the leaving of two worthless stoves on the premises do not create a tenancy for another year.*

The city of New York leased a building for the use of one of its bureaus for a period of three years beginning January 1, 1899, and with the assent of the lessor placed a new lock upon the premises. The representatives of the bureau, to the personal knowledge of the lessor, removed from the building in November, 1901, leaving the door locked, and two worthless stoves on the premises. The keys of the lock were handed to the chief officer of the bureau, who placed them in his desk. His successor found the keys in February, 1902, and tendered them to the landlord, who declined to accept them.

*Held,* that the leaving of the useless stoves upon the premises and the failure to turn over the keys at the expiration of the lease did not constitute a holding over on the part of the city, which would bind the city to retain the premises for another year.

APPEAL by the defendant, The City of New York, from a judgment of the Municipal Court of the city of New York, borough of the Bronx, in favor of the plaintiff, entered on the 23d day of September, 1902.

*Samuel K. Probasco* [*James McKeen* with him on the brief], for the appellant.

*John R. Halsey*, for the respondent.

WILLARD BARTLETT, J. :

In this action the plaintiff has recovered $120 as one quarter's rent from the 1st day of January, 1902, for a building in the borough of the Bronx. The city had occupied this building under a written lease from the plaintiff for a term of three years, beginning on January 1, 1899. The complaint alleged that after January 1, 1902, the city continued and remained in possession and occupation of the said premises, thereby electing to continue its tenancy for another year; and the principal question presented by this appeal is whether the action of the city through its representatives at the conclusion of the term under the written lease and thereafter, can be construed into a holding over which binds the city for another year's rent.

The premises were occupied by the topographical bureau of the board of public improvements. The representatives of this bureau moved out some time in November, 1901. The fact of their removal was known to the plaintiff, who testified that he did not see anybody occupying the premises after that time. It appears that the agents of the bureau during the city's occupancy put a new Yale lock on the door, which was left fastened on the occasion of their departure. They also put in two stoves which had become worthless and were left because they were no longer serviceable to the city. It further appears that the two keys to the lock which has been mentioned were handed to a Mr. Reis, the chief engineer of the bureau of public improvements, at the time when the building was vacated, and were by him placed in his desk where they were not discovered by the gentleman who succeeded him in office at the end of the year 1901 until about the middle of February, 1902, when they were tendered to the plaintiff, who declined to receive them.

The alleged liability of the city is based upon two facts: (1) The leaving of the useless stoves on the premises, and (2) the failure to turn over the keys to the landlord before or upon the expiration of the term under the written lease. In my opinion, under all the

circumstances of the case, these facts do not justify the finding that there was such an occupation of the building by the city as to render it liable for further rent.

In the case of *Gibbons* v. *Dayton* (4 Hun, 451) a few valueless pieces of property were left in the rooms, and the court declared that "worthless fragments and articles which tenants are often accustomed to leave behind them have never been held to constitute a continuance of the tenancy. The landlord's remedy, if any, for such an injury is quite different from treating the tenancy as renewed by the omission to carry everything away whether valuable or not." As to the keys, the case is analogous to *Gray* v. *Bompas* (11 C. B. [N S.] 520), where the mere accidental detention of the key by the tenant for two days beyond the expiration of the term was held not to be any evidence of such use and occupation as to render the tenant liable for another quarter. Here, it is true, the detention of the keys was much longer than in the case cited; but it is to be noted that the lock had been placed upon the premises by the city with the assent of the landlord; that he had personal knowledge that the city had vacated the premises in November; and that the retention of the keys by the city was due solely to the lack of information on the part of a new officer who, as the evidence indicates, would have delivered them to the landlord at once if he had known or been informed that they were in his custody. The detention of the keys was just as accidental as it was in *Gray* v. *Bompas* (*supra*), and the fact that it was longer in duration does not under the proof in the present case make it any more significant of an intention on the part of the landlord to continue the occupancy of the premises.

I think the judgment should be reversed.

GOODRICH, P. J., WOODWARD, HIRSCHBERG and JENKS, JJ., concurred.

Judgment of the Municipal Court reversed and new trial ordered, costs to abide the event.