CITY BANK-FARMERS TRUST COMPANY, as Trustee under Two Certain Deeds of Trust Dated August 15, 1919, Made by WILLIAM WALDORF ASTOR, Plaintiff, *v.* BANK OF UNITED STATES and Another, Defendants.

Supreme Court, New York County, June 27, 1935.

*Taylor, Blanc, Capron & Marsh* [*C. Alexander Capron* and *David Kelly* of counsel], for the plaintiff.

*Carl J. Austrian* [*Edward Feldman, Warren C. Fielding, Richard F. Weeks* and *Henry L. Bayles* of counsel], for the defendants.

ROSENMAN, J.   On April 30, 1928, plaintiff entered into a lease with the Colonial Bank, covering certain premises in New York city, to be used as a bank.   The period of the lease was ten years, from May 1, 1928, to October 1, 1938, at a graduated rental commencing at $19,000 per year and ending at $31,000 per year.   The lessee subsequently was merged into the defendant Bank of United States, which took possession of the premises.

On December 11, 1930, the Bank of United States, which was then admittedly insolvent, was taken over by the Superintendent of Banks pursuant to the provisions of the Banking Law.   Up to that time no default had occurred under the lease.   The Superintendent remained in possession of the premises.   On the first of each month thereafter and up to and including July 1, 1931, he sent to the plaintiff a check for the amount of rent reserved in the lease. Each check was accompanied by a letter reading as follows: " The enclosed check in the amount of $          is intended to pay reasonable rental value for the use and occupation of your premises, now occupied by the Superintendent of Banks, and is not to be considered as a payment of rent under and by virtue of the terms of any lease or agreement.

" The Superintendent has not as yet determined whether to adopt or reject any lease of the premises in question, and the payment made now, as evidenced by the enclosed check, is tendered with the understanding that no such election has been made."

Each of these checks was accepted and deposited by the plaintiff.

On May 6, 1931, the Superintendent gave notice for the presentation of claims against the bank on or before June 29, 1931, in accordance with section 72 of the Banking Law.

Prior to June twenty-ninth, the plaintiff, through its attorneys, made oral demand upon the Superintendent on several occasions to elect whether he would adopt or repudiate the lease for these premises. The Superintendent declined to make such election, on the ground that reorganization proceedings were then pending and that if they were successfully completed, the plan would require the use of the premises. On June 22, 1931, plaintiff commenced a proceeding to compel the Superintendent to make such election. The proceeding was concluded by a stipulation approved by the court. The stipulation provided that the application of the plaintiff to require the Superintendent to make an election be denied and, as later amended, provided further, in part, as follows:

" 7. If the Superintendent should hereafter reject such lease, and it should be determined that he has the right so to do, such rejection shall be deemed to relate back to and to have taken effect as of the 11th day of December, 1930, and any claim of the claimant shall not be prejudiced by reason of the fact that the Superintendent did not reject such lease on or before the 29th day of June, 1931, but shall have the same right to an allowance, if any, as if such lease had been so rejected on the 11th day of December, 1930."

Thereafter, and on June 29, 1931, plaintiff filed its claim with the Superintendent of Banks. The claim was rejected.

This action was originally commenced as one at law on March 15, 1932, at which time no part of the premises had been let. The complaint was served on October 15, 1932, by which time a portion of the premises had been let. On May 9, 1933, an amended complaint was served, alleging that the lease had been terminated and claiming damages pursuant to the covenant contained in its lease. The action was transferred on December 13, 1933, from the Trial Term calendar to Special Term calendar.

At the time of the trial the demised premises had been fully relet to three different tenants. It was necessary to expend the sum of $4,763.41 for alterations of the premises for this purpose. It is conceded that that sum was a reasonable amount. All of the present leases expire on or after the date when the bank lease would have expired had it not been terminated, except one lease which will expire before such date.

In this action the plaintiff contends (1) that the Superintendent, by failure to reject the lease on or before June 29, 1931, has adopted it, and that the plaintiff is, therefore, entitled to judgment against the Superintendent for an amount equal to the rent reserved in the lease from and after August 1, 1931, less such sums as have been or may hereafter be received by the plaintiff upon the reletting of said premises; (2) that, if the court should determine that there

has been no adoption by the Superintendent, then the plaintiff is entitled to recover from the Superintendent (a) for the use and occupation of said premises from July 31, 1931, to December 1, 1931; (b) damages against the bank subsequent to the termination of its lease, to be measured by the difference between the rent reserved in the lease and the amounts reserved in the leases of reletting. In the case of the lease which expires before the expiration date of the bank lease, the plaintiff fixes its damages as the difference between the rent reserved in the bank lease for the one year's difference and the fair rental value of the premises for that year, which the plaintiff's witnesses estimated at $6,750; (3) as further damages, the amount expended for alterations, as aforesaid.

The amount of the reasonable rent and occupation during the time when the Superintendent was in actual possession of the premises has been fixed by stipulation at $1,666.66 per month. The defendants concede that the Superintendent occupied, and is liable for the use and occupation of, the premises for the month of August, in the sum of $1,666.66.

As to the balance of the claim the defendants deny liability.

The plaintiff has failed to sustain its contention that the Superintendent has adopted the lease. The burden is not upon the Superintendent actually to disaffirm or else be deemed to have ratified. The failure of the Superintendent to elect within a reasonable time was not an adoption of the lease, as the plaintiff contends.

" It is not the rule that the contract is binding on the receiver until renounced." (*Pacific Western Oil Co.* v. *McDuffie*, 69 F. [2d] 208, 213 [C. C. A. 9th, 1934]; certiorari denied, 293 U. S. 568; 55 Sup. Ct. 79; *Samuels* v. *Drew & Co., Inc.*, 292 Fed. 734 [C. C. A. 2d, 1923]; *Menke* v. *Wilcox*, 275 id. 57; *Platt* v. *Philadelphia & Reading R. R. Co.*, 84 id. 535 [C. C. A. 3d].)

Furthermore, the letters accompanying the various checks which were sent by the Superintendent for use and occupation indicate clearly that the Superintendent was not adopting the lease. He definitely stated in these letters that he had not as yet exercised his right of election. This position was concurred in by the lessor by its acceptance of the checks.

The stipulation entered into between the parties after the application to compel the Superintendent to elect, indicates also that there had been no adoption of the lease. It provided that if the Superintendent should hereafter reject the lease, it should be deemed to relate back to and to have taken effect as of December 11, 1930. The inclusion of the proviso, " and if it should be determined that he has the right so to do," does not refer to the right of the Superin-

tendent to reject the lease after June 29, 1931, but refers to the claim made by the plaintiff that the Superintendent had no right of election whatever, either before or after June twenty-ninth. This is made clear by the fifth paragraph of the stipulation, which states that: " The claimant demanded of said Superintendent that he make his election, if he has the right to make such an election, before June 29, 1931, but the Superintendent refused to make such an election."

The Superintendent is not liable for use and occupation of the premises after August 31, 1931. The plaintiff had been orally notified that the Superintendent was going to quit the premises by the end of August, 1931. The employees of the bank were all removed. Telephone service was discontinued. All movable fixtures and personal property were taken from the premises on or before the last day of August, 1931. There remained only the fixtures attached to the realty, which were abandoned. It was further proved that the plaintiff actually placed the premises upon the market for rent on August 17, 1931.

The only evidence to sustain the plaintiff's contention of continued possession by the Superintendent was the fact that the keys were retained by the bank. The testimony is that this was due solely to an oversight. Under the circumstance, the Superintendent may not be held for use and occupation beyond August 31, 1931. (*Brennan* v. *City of New York*, 80 App. Div. 251.)

The other issues in this case must be determined in favor of the defendant in accordance with the views expressed in the memorandum in *Ruppert Realty Corporation* v. *Bank of United States* (156 Misc. 93), decided herewith. Accordingly the claim for damages arising after the termination of the lease, including the cost of alterations, cannot be allowed.

Judgment is directed for the defendants.