## Case No. 6,725.

### Ex parte HOUGHTON et al.

### In re FORTUNE.

[1 Lowell, 554.] [1]

District Court, D. Massachusetts. March, 1871.

BANKRUPTCY—LANDLORD AND TENANT—EVIDENCE.

1. The bankrupt was sub-lessee of a shop, and was to pay a certain rent and all taxes assessed during the term; he took possession June 1, 1868, and failed and went into bankruptcy early in September, 1869. The lessors had a right to enter and terminate the tenancy in case of the lessee's bankruptcy, or breach of covenant, but without prejudice to any remedy for arrears of rent or preceding breach of covenant. They entered soon after the bankruptcy and relet the premises at a loss. *Held*, the loss of rent accruing after the bankruptcy cannot be proved either as a debt or as unliquidated damages.

[Cited in Bailey v. Loeb, Case No. 739; Re Hufnagel, Id. 6,837; Ex parte Pollard, Id. 11,252.]

---

[1] [Reported by Hon. John Lowell, LL. D.. District Judge, and here reprinted by permission.]

2. The lessors terminated the bankrupt's estate by their entry, and cannot prove for the loss sustained by reletting at a lower rent.
[Cited in Ex parte Lake, Case No. 7,991.]
[Cited in Abbott v. Stearns, 139 Mass. 169. 29 N. E. 379; Bowditch v. Raymond, 146 Mass. 114, 15 N. E. 285.]

3. They may prove for the arrears of rent and for any damages sustained by a breach of the covenant to repair.
[Cited in Treadwell v. Marden, 123 Mass. 391; Deane v. Caldwell. 127 Mass. 244.]

4. The taxes are a part of the rent and not a privileged debt.

5. By the lease the bankrupt was bound to pay the taxes of 1869, and parol evidence is not admissible to prove that the parties understood he was to pay those of both years.

The petitioners hold a long lease of a shop on Washington street, Boston, and on the thirtieth day of May, 1868, they underlet the shop to James Fortune, the bankrupt, for eight years and ten months from the first day of the next June, being two days less than their own term, at a rent which was payable monthly and very largely in advance of what they paid. Fortune covenanted to pay the rent, and all taxes which should be assessed on said premises during said term, to make no alterations without the written consent of the petitioners, and to keep the premises in as good order as at the beginning of the term, reasonable use, &c., excepted. The petition in bankruptcy was filed June 9, 1869. The petitioners alleged a breach of all these covenants, and have proved for all arrears of rent, without objection. They took possession of the premises early in September, 1869, on the day on which they saw a notice in the newspaper of the adjudication in bankruptcy, and say that they found the shop injured by alterations to the extent of five hundred dollars. They have since relet the shop at a reduced rent, and they asked to have the damages suffered by them in the reletting of the estate as well as the damage by the alterations assessed by the court or by a jury. They also offered to prove as preferred debts the city and state taxes assessed on the premises by the city of Boston for the years 1868 and 1869, which were assessed to the owner of the estate, and paid by the petitioners as required by the terms of their lease from the owner. At a hearing before the court the facts above mentioned were proved, and it further appeared that the lease contained this clause: "Provided also, and these presents are upon condition, that if the lessee or his representatives or assigns do or shall neglect or fail to perform and observe any or either of the covenants * * * or if the lessee shall be declared bankrupt or insolvent according to law, or if any assignment shall be made of his property for the benefit of creditors, then, and in either of the said cases, the lessors, or those having their estate in said premises may, immediately, or at any time thereafter, and whilst such neglect or default continues, and without further no-

tice or demand. enter into and upon the said premises, or any part thereof, in the name of the whole, and repossess the same, as of their former estate, and expel the lessee, &c. * * * without prejudice to any remedies which might otherwise be used for arrears of rent or preceding breach of covenant, anu that upon entry, as aforesaid, the said term shall cease and be ended."

E. Avery, for petitioners. We have suffered large damages by being obliged to re-enter and to let at a less rent. The case is therefore within the terms of the act, unliquidated damages arising out of any contract or promise. We did not enter because of the bankruptcy, but to protect ourselves, the bankrupt having removed his goods and left the shop just before he filed his petition, and in effect abandoned his lease.

B. F. Brooks, for assignees. The statute expressly says that rent may be proved up to the time of the bankruptcy, and this is a clear implication that future accruing rent cannot be proved. It is no debt, contingent or otherwise, as has been often decided: Auriol v. Mills, 4 Term R. 94; Hendricks v. Judah, 2 Caines, 25; Lansing v. Prendergast, 9 Johns. 127; Savory v. Stocking, 4 Cush. 607; Bosler v. Kuhn, 8 Watts & S. 183.

LOWELL, District Judge. The most important question is, whether the petitioners can prove for the damages suffered by them in reletting the premises. The earlier law of England, which we have adopted in this country, was that the assignees of a bankrupt have a reasonable time to elect whether they will assume a lease which they find in his possession, and if they do not take it the bankrupt retains the term on precisely the same footing as before, with the right to occupy, and the obligation to pay rent; if they do take it he is released as in all other cases of valid assignment, from all liability excepting on his covenants, and from these he is not discharged in any event. Henley, Bankr. (3d Ed.) 237; Auriol v. Mills, 4 Term R. 94; Copeland v. Stephens, 1 Barn. & Ald. 593; Tuck v. Fyson, 6 Bing. 321; Rob. Bankr. 328. This rule was long since modified in England by statutes 49 Geo. III. c. 121, § 19, and 6 Geo. IV. c. 16, § 75, by which the bankrupt was released from his covenants if either the assignee accepted the lease, or the bankrupt himself surrendered it to his lessor within fourteen days after notice that the assignee had declined. This remained the law by re-enactment in the several revisions of the bankrupt acts down to the latest in 1869 (32 & 33 Vict. c. 71, § 23), which authorizes an assignee to disclaim any onerous property or contract, and deprives the bankrupt of all interest therein whether the assignee disclaims or not, and gives any person "injured by the operation of this section" the right to prove the amount of his injury as a debt under the bankruptcy. This is the first

legislative recognition that I have found of any debt of the character now sought to be proved, and the petitioners have failed to discover any judicial determination of a similar right. The American authorities follow the line of reasoning and decision of the earlier English cases, and hold that a lessor has no provable debt, contingent or otherwise, for the reason that rent accrues from time to time, and is not and cannot be due in solido beforehand, since it depends on occupation from time to time.

Leaving out of view for the moment the peculiar clause of this lease relating to bankruptcy, which the petitioners say they have never acted on, and overlooking the fact of their re-entry, how did the bankruptcy affect this lease? The assignees did not assume the lease, and consequently the original parties stand simply as landlord and tenant. If the bankrupt can find means to pay his rent, or can find a purchaser for the lease, no one is injured; if he cannot, the lessors may re-enter. Where are the unliquidated damages to be assessed against the estate of the bankrupt? In the very useful and accurate work of Mr. Taylor on Landlord and Tenant (section 457), it is suggested that the question whether future rent can be proved as a debt in bankruptcy must depend on the particular language of the several statutes, and that under the broad authority to prove contingent debts contained in some of these acts, such proof might, perhaps, be made. The latter part of the suggestion is not supported by any decision, and seems rather a prophecy of the English "bankruptcy act" of 1869 than a gloss upon any which had preceded it. The United States act of 1841 [5 Stat. 440] gave very full power to prove contingent debts and even to have them valued, but future rent was held not to be within its terms. Bosler v. Kuhn, 8 Watts & S. 183; Savory v. Stocking, 4 Cush. 607. There is, no doubt, strong reason for passing such a law, but the existing law does not cover the case. It is not uncommon now for leases to contain a provision that in case of breach the lessor may enter and relet the estate at the expense and risk of the lessee and charge him with the deficiency. Under such a clause a lessor might well have the right to prove for the full amount of the damages which should be ascertained by such reletting. Such a case would be analogous to that arising under the bankruptcy of the Metallic Compression Casting Company, which had contracted in writing with a skilled workman to employ him for a fixed time at a fixed rate of wages, and had discharged him when they stopped payment. I ruled to the jury that the workman had his election to sue for his wages from time to time, or to proceed at once for unliquidated damages, and when the company were in bankruptcy might have his damages assessed under section 19, and prove for the amount of the verdict; a ruling which was excepted to,

but the case was not carried further, and I see no occasion to doubt the soundness of the instruction. But rent stands on a very different foundation, because there is no right of action at the time of the bankruptcy, excepting for the arrears.

There is another sufficient answer to this part of the case. The petitioners have availed themselves of the power of re-entry, and have put an end to the estate of the bankrupt and repossessed themselves "as of their former estate." Such an entry is an eviction, and puts an end to the rent by operation of law, and by the terms of this lease, though by law and by contract they do not thereby waive any existing right of action for rent in arrear, or "preceding breach of covenant." This is all that their disclaimer amounted to, and if it were not, they cannot be heard after they have entered and exercised all acts of ownership and relet the premises, to say that they have not entered as lessors nor to repossess the premises, but merely as agents of the lessee, and to save the estate from waste. We have already seen that this lease confers no power or agency upon the petitioners in this matter, and their entry must be taken to be according to their right. It is immaterial whether the bankruptcy was the breach for which they entered; it is enough that they have entered lawfully, and have ended the term and the rent together. If the lease had been valuable, and they had relet the shop for an increased rent, I do not see how the assignees could have made any valid objection to the re-entry.

The petitioners have not waived any right they had before entry, and may prove for such damages as they have suffered by the changes made in the stairway and shelves. The case was heard by the register, Mr. Ellis, whose rulings were in accordance with my views in every particular. I find on this point that he refrains from assessing the damages, and refers the whole matter to the court. It was said at the argument that the register had once assessed these damages at seventy-six dollars, after a full hearing. If so he must have reviewed his decision, for he reports a mere reference to the court, and by consent of the parties omits the evidence. Upon the proofs before me I consider fifty dollars to be ample damages, and assess the same accordingly.

The petitioners are entitled to prove for one year's taxes. Any argument which shall establish their right to prove for those of 1868 will be equally strong to prevent the proof for 1869. The covenant is to pay all taxes assessed during the term, and taxes are assessed as of the first day of May. The tenancy began June 1, 1868, and ended about September 1, 1869. It seems to me that under this covenant the lessee was bound to pay the taxes for 1869, and not those for 1868, and the former having been due in theory of law at the time of the bankruptcy, though not payable until afterwards, may be proved. This debt is not entitled to preference, because as between these parties it rested in contract merely, and was to all intents and purposes a part of the rent. The taxes were not assessed to the bankrupt nor to the petitioners, and the city had no right to prove them in the bankruptcy. There is no right of preference or lien to which the petitioners can be subrogated, but only a right of action over against Fortune, if he should neglect to pay the taxes to the petitioners on demand after they had themselves paid them. Parol evidence was offered to show that both parties understood that the taxes of 1868 were to be paid by the tenant, but such evidence was inadmissible, and was rightly taken by the register only de bene. There was no offer to show a new contract by parol founded on a new consideration, but merely to explain the lease.

Let orders be drawn in accordance with this opinion.