WILLIAM I. BOWDITCH & another *vs.* CHARLES E. RAYMOND & another.

Suffolk. November 9, 1887. — January 16, 1888.

Present: MORTON, C. J., FIELD, C. ALLEN, HOLMES, & KNOWLTON, JJ.

*Lease — Rent — Insolvency — Proof of Claim.*

The St. of 1879, c. 245, § 1, re-enacted in the Pub. Sts. c. 157, § 26, as to the acceptance or surrender by assignees in insolvency of leases or agreements in writing for use and occupation, does not apply to a lease determined before the first publication of notice.

A lease provided that, if the lessees should assign for the benefit of creditors, the lessors might enter to end the lease, and, in their discretion, relet the premises at the lessees' risk, who were to continue liable for the rent and to be credited with any sums realized from the reletting. The lessees made an assignment and the lessors entered to determine the lease. Subsequently the lessees went into insolvency, and thereafter the lessors relet the premises at a reduced rental. *Held*, that a claim against the insolvent estate, being the difference between the rent as reserved and sums received by the lessors, was rightly disallowed.

APPEAL from a decision of the Court of Insolvency, disallowing the claim of the appellants against an insolvent estate. The appeal was heard in the Superior Court, without a jury, by *Mason*, J., on agreed facts, which, so far as material, are as follows:

On March 30, 1883, the appellants, as trustees, made a lease to McDewell and Adams of the premises numbered 156 Tremont Street in Boston for a term of ten years " from the first day of November, A. D. 1884," at a yearly rent of $10,000, payable in

equal monthly payments, the first payment to be made on December 1, 1884. The lease provided that, if the "lessees shall be declared bankrupt or insolvent according to law, or if any assignment shall be made of their property for the benefit of creditors, then and in either of said cases the lessors, or those having their estate in the said premises, lawfully may, immediately or at any time thereafter, and whilst such neglect or default continues, and without further notice or demand, enter into and upon the said premises, or any part thereof, in the name of the whole, and repossess the same as of their former estate, and expel the said lessees, and those claiming under them, and remove their effects (forcibly if necessary), without being taken or deemed guilty of any manner of trespass, and without prejudice to any remedies which might otherwise be used for arrears of rent or preceding breach of covenant; and thereupon the lessors may, at their discretion, relet the premises at the risk of the lessees, who shall remain for the residue of said term responsible for the rent and taxes herein reserved, and shall be credited with such amounts only as shall be by the lessors actually realized. Also, that in case the premises, or any part thereof, shall during said term be destroyed or damaged by fire," the rent was to be proportionately abated until the said premises should have been put in proper condition for use.

On October 15, 1884, the lessees, who were in possession of the premises under an agreement with prior lessees, made a voluntary assignment for the benefit of creditors, and on November 1, 1884, the lessors entered upon the premises to terminate the lease, and from and after December 1, 1884, were in possession of the premises.

On December 2, 1884, the lessees filed a petition in insolvency, subsequently filing a schedule of creditors, which included their liability under the lease. On December 30, 1884, the appellees, who had been chosen assignees of the estate, filed in the Court of Insolvency a disclaimer of the lease.

On February 21, 1885, the lessors relet the premises for the residue of the term at a reduced rental, and their claim, which was disallowed, was for the difference between the rent reserved in the original lease and such reduced rental and certain minor matters.

The judge found for the appellees, and reported the case for the determination of this court.

*J. B. Warner*, for the appellants.

I. The first question is whether McDewell and Adams are still liable upon their covenant, and remain responsible for rent for the residue of the term. This seems clear: the stipulation in a lease by which the lessor may re-enter for breach of condition, relet the premises at his discretion, and hold the lessee for any loss of rent, has been found in the usual forms of lease for a generation, and was passed upon by this court nearly twenty-five years ago in *Way* v. *Reed*, 6 Allen, 364.

The entry on November 1, 1884, whether that day be regarded as included within the term or not, did not terminate the liability of the tenants upon their covenant. Even before the term actually began, the lessees had an interest, *interesse termini*, which, though not an estate, is recognized by the law as something more than a contract. Taylor, Landlord and Tenant, § 176. Com. Dig. Assignment (A), Estates (G 14). Shep. Touch. 267. Co. Litt. 46 b, 51 b. *Whitney* v. *Allaire*, 1 N. Y. 305, 311. The lessee's obligation to pay rent springs from his covenant, and is wholly independent of possession, being complete though he never enters, or even gives notice that he will not occupy, and his only defence would be some wrongful act of the lessor preventing possession. Taylor, Landlord and Tenant, *ubi supra*. *Becar* v. *Flues*, 64 N. Y. 518. *Birckhead* v. *Cummins*, 4 Vroom, 44. *Spencer* v. *Burton*, 5 Blackf. 57.

II. The question of the admissibility of the proof in insolvency is first to be considered under the provisions of the insolvency statute prior to the amendment of 1879. Inasmuch as the debtor cannot get his discharge from his liability unless it is provable, the question concerns the debtor as much as the creditor. The word "debts" in that statute is to be construed liberally, in order to accomplish the two ground objects of the act; the objects, namely, of relieving the debtor who surrenders his property, and of distributing that property among his creditors.

The statute is highly equitable in its character, and has always been administered avowedly upon equitable principles. *Lothrop* v. *Reed*, 13 Allen, 294. *Gray* v. *Bennett*, 3 Met. 522. *Brown* v. *Lamb*, 6 Met. 203.

It is certainly true that a claim for rent not yet due has not been considered admissible in proof either in insolvency or bankruptcy. *Savory* v. *Stocking*, 4 Cush. 607. *Ex parte Houghton*, 1 Lowell, 554. *Treadwell* v. *Marden*, 123 Mass. 390. But this is for the reasons stated by Shaw, C. J., in *Boardman* v. *Osborn*, 23 Pick. 295; namely, that rent is supposed to come out of the profits of the land, and occupation is the consideration for it, therefore no action should lie before it has actually accrued; and Lord Coke is quoted to the effect that a release of all actions would not release rent subsequently accruing on an existing lease. These reasons do not apply here. The lessees in this case are now liable, absolutely, to a fixed monthly payment, which, though still alluded to as rent, should, for the purposes of this discussion, be designated as a sum equal to the former rental. The obligation does not depend upon occupation, nor is it liable to be terminated by eviction.

There is no question of an estate in the lessee out of which the rent is said to grow, — there is a simple contract liability. Can there be any doubt, to apply Lord Coke's test, that a general release given by these appellants to the lessees would discharge them from this covenant? If so, there is a present liability.

We submit that the existence of the liability is complete; that the only question is that of amount, and that this is certain because it may be made certain. As matters now stand, there is a covenant to pay a fixed sum, and the landlord holds property, namely, the lease the income of which he is bound to apply to the debt. This is in effect only a debt secured, the security being the lease. Or it may be considered, what it in reality is, a case where, in a sale of a chattel, the vendee has refused to accept, and the vendor is entitled to the stipulated price, less the value of the goods.

Our insolvency system, unlike the English, provides the machinery through a jury trial, by which just such questions as this may be dealt with (*Lothrop* v. *Reed*, *supra*); and we ask only to have this contract treated as any other contract, and damages estimated, as was done in the case just cited, since the stipulation of the parties fixing the lessees' liability follows exactly the principles which the law would have applied without it. *Whitney* v. *Boardman*, 118 Mass. 242. *Abbott* v. *Stearns*, 139 Mass. 168, 172.

Opposed to our contention is the case of *Ex parte Lake*, 2 Lowell, 544. In this case, a claim arose under a covenant in a lease precisely the same in terms with that which we are discussing, and Judge Lowell held that the claim was not provable. As to this case we must say that the learned judge seems to exclude the claim because the word "rent" was used, and without reference to the reasons upon which the rule as to rent stands, none of which seem applicable, and seems also to disappoint the just expectations which he had raised in *Ex parte Houghton*, 1 Lowell, 554. The decision in the second case can hardly stand with the suggestions of the former, which retain their weight and value, though now overlooked. We submit that this case should not control this court in administering our insolvency act.

. Against this we put the contrary and more equitable decision of the United States District Court in *In re Clancy*, 10 Nat. Bankr. Reg. 215. The controlling fact there, namely, that what was rent in name was no longer dependent on occupation, is the decisive consideration here.

III. We come now to the St. of 1879, c. 245, passed expressly to meet the case of subsequently accruing rent. This statute seems to be explicit enough; but the defendants seek to avoid its effect in this case by a technical argument, which, if we understand it, is this.

The statute, they say, contemplates only a case where the lease carries a beneficial interest, and where the assignee has the alternative presented him of accepting or refusing such an interest. The use of the word "property" and the provision for an election both, according to their contention, limit the statute to such leases as still confer a right of occupation, and if for any reason the insolvent had lost his right of occupation, as by assignment of the lease, or by the operation of some provision in it, then the statute does not apply, since the assignee has no real choice.

This, surely, is a somewhat liberal construction to put upon a statute for the relief of insolvent debtors. The cases where relief is most needed, those, namely, of liability with no corresponding benefit remaining, are, on this theory, the cases not provided for.

The whole spirit and purpose of the act, as already pointed out, require the most liberal and equitable interpretation. It was unquestionably passed in consequence of the previous

decisions, and for the purpose of giving the creditor his proof, and the debtor his discharge.

No amendment was needed in order to give to the assignee full rights over leasehold property held by the insolvent. The assignee always had the alternative either to assume such a lease and be bound by its provisions, or to disclaim it and be free from all liability. *Hoyt* v. *Stoddard*, 2 Allen, 442. *Commonwealth* v. *Franklin Ins. Co.* 115 Mass. 278. *Abbott* v. *Stearns*, 139 Mass. 168. *Ex parte Houghton*, 1 Lowell, 554. The real purpose of the act is found in the later clauses, which introduce the new feature of giving the insolvent his discharge.

Our statute was " plainly taken, with some modifications, from the English bankruptcy act of 1869 " (*Abbott* v. *Stearns*, 139 Mass. 168), and the decisions under that act throw great light upon this question. *Ex parte Dyke*, 22 Ch. D. 410. *Ex parte Patterson*, 11 Ch. D. 908. *In re Maughan*, 14 Q. B. D. 956. *Ex parte Corbett*, 14 Ch. D. 122. *In re Tickle*, 3 Morrell, 126. *Ex parte Walton*, 17 Ch. D. 746.

*W. G. Russell*, (*E. B. Hale* with him,) for the appellees.

MORTON, C. J. Under our insolvent law, prior to the St. of 1879, c. 245, no debts, with certain exceptions not material to this case, were provable, unless they were debts " absolutely due " at the time of the first publication of the notice of issuing the warrant. It has accordingly been repeatedly held that future rent, to accrue under a lease in which the insolvent debtor is lessee, cannot be proved. *Savory* v. *Stocking*, 4 Cush. 607. *Treadwell* v. *Marden*, 123 Mass. 390. *Deane* v. *Caldwell*, 127 Mass. 242. *Ex parte Houghton*, 1 Lowell, 554.

The principle of these cases is, that such rent is not a debt absolutely due at the time of the first publication. The lease may be terminated by the eviction of the lessee or otherwise, and no rent may ever accrue or become due. The lessor's claim is a contingent one. It is not contingent merely as to amount, but the very existence of the claim depends upon a contingency. *Boardman* v. *Osborn*, 23 Pick. 295.

In the case before us the lease contains the provision that, if the lessees shall be declared bankrupt or insolvent, or shall make an assignment for the benefit of their creditors, the lessors may enter and expel the lessees, " and thereupon the lessors

may, at their discretion, relet the premises at the risk of the lessees, who shall remain for the residue of said term responsible for the rent and taxes herein reserved, and shall be credited only with such amounts as shall be by the lessors actually realized." The appellants contend that under this provision the liability of the lessees arises solely from their covenant, and that the amount to be paid by them is not technically rent, as the provision does not contemplate that they are to occupy the premises. But however this may be, the sums to be paid partake of the character of rent so largely that they come within the same principle. The covenant is to pay the rent reserved reduced by such sum as the lessors might receive from the new lessees if they should relet the premises.

At the first publication of notice there was a contingency, not merely as to the amount of liability, but as to whether it would ever attach or arise out of the covenant. The lessors in their discretion might not relet the premises, but resume possession of them. It may be that the lessees will be evicted by a paramount title, in which case it cannot be doubted that the liability of the original lessees would be terminated, or fail to attach. It may happen that the new lessees will pay as large a sum as the rent and taxes reserved in the lease, in which event no liability would arise under the covenant. Or the premises might be destroyed by fire, and thus the liability of the lessees be terminated. The existence of any debt in the future depends upon contingencies, and therefore the appellants' claim cannot be proved under our insolvent law prior to the St. of 1879.

In the bankrupt court of this district it has been decided that a claim under a like clause in a lease could not be proved in bankruptcy. *Ex parte Lake*, 2 Lowell, 544.

The next question is, What is the effect of the St. of 1879, c. 245, § 1, re-enacted in the Pub. Sts. c. 157, § 26? The part of the statute which is of importance in this case is as follows: "When any of the property of a debtor consists of a lease or agreement in writing, whereby he is liable for the rent therein reserved or for the use and occupation of premises as therein stipulated, the assignee at any time may, and at the request in writing of either the debtor, or of the lessor, or of those having his estate in the premises, shall, within twenty days after such

request, by a written instrument filed with the records of the case, elect either to accept and hold under said lease or agreement in writing, or to disclaim the same; and if he elects to disclaim, such lease or agreement in writing shall thereupon be deemed to have been surrendered as of the day on which said disclaimer was so filed. And the debtor, provided he obtains his discharge in insolvency, shall be discharged from all liability under or by reason of said lease or agreement in writing, whether the assignee does or does not disclaim the same as aforesaid; and the lessor or those having his estate in the premises may prove such damages, if any, as are caused by such surrender, as a debt against the estate of the debtor."

The objects of the statute were to define the rights and duties of assignees when they found a part of the property of the debtor to consist of a lease or other instrument under which he was liable for rent or for use and occupation, and to give them the right to accept or disclaim such property, as the interests of the estate required; to enlarge the effect of the debtor's discharge by making it a bar to his liability under such lease or agreement; and to give to the lessor thereunder the correlative right to prove his damages if it is disclaimed and surrendered.

All parts of the statute refer to the case where there is property of the debtor consisting of a lease or an agreement for use and occupation. In other words, the provisions as to the discharge of the debtor and the proof by the lessor apply only to the case where there is an existing lease or agreement which the assignee can accept or surrender. The lessors can prove only such damages as are caused " by such surrender."

In inquiring whether the statute applies to the case at bar, we are met with this difficulty. Before the first publication of notice, the lessors had entered upon the premises and expelled the lessees, and thus practically terminated the lease. The lessees had no longer any rights in the premises; they could not occupy them; they could not re-enter; the only interest they had in the matter was a bare liability under their covenant or agreement to indemnify the lessors for any deficiency in the amount they might realize from new tenants if they chose to let to such tenants. There was no property of the debtor which the assignee could accept; there was no right or interest in the

debtor which the assignee, if he had undertaken to accept, could take or hold; and there was nothing for him to surrender.

Suppose this had been a case where the lessors had entered and expelled the insolvent two or three years before the insolvency. Could an assignee under the guise of accepting the lease revive it, and subject the estate to the liability of indemnifying the lessors for any deficiency in the rent, and thus make them preferred creditors? In such a case there is no election for the assignee to make; there is nothing to accept and nothing to surrender, and we are of opinion that it does not fall within the statute.

The Legislature had in mind the ordinary case of an existing lease or agreement; it did not contemplate a case like the one before us, and did not provide for it.

The appellants cite several English cases arising under the bankruptcy act of 1869, from which our statute of 1879 was taken with some modifications. 32 & 33 Vict. c. 71, § 23. *Ex parte Dyke*, 22 Ch. D. 410. *Ex parte Patterson*, 11 Ch. D. 908. *In re Maughan*, 14 Q. B. D. 956. *Ex parte Corbett*, 14 Ch. D. 122. *In re Tickle*, 3 Morrell, 126. *Ex parte Walton*, 17 Ch. D. 746.

The English bankruptcy statutes differ so much from our insolvent law that adjudications under the former are of very little aid to us in determining the construction of our statutes. But it will be found upon examination that the cases cited are not like the case at bar. In each of them there was an existing lease or term vested in the bankrupt at the institution of the bankruptcy proceedings, having more or less time to run.

We have considered the case in the light most favorable to the appellants, as if they had entered and expelled the lessees after the lease went into operation. We do not find it necessary to consider whether they in fact took possession before the term commenced, nor, if they did so, what would be the effect upon the rights of the lessors and lessees. The facts, that the assignees disclaimed the lease in this case, and that the insolvent debtors entered the appellants' claim upon the schedule of creditors, are unimportant. Neither could thus change the application of the statute, or affect the rights of the creditors.

*Judgment for the appellees.*