JACOB RUPPERT REALTY CORPORATION, Plaintiff, *v.* THE BANK OF UNITED STATES and Another, Defendants.

Supreme Court, New York County, June 27, 1935.

*Fitch & Grant* [*Martin A. Schenck* and *Byron Clark, Jr.*, of counsel], for the plaintiff.

*Carl J. Austrian* [*Edward Feldman, Warren C. Fielding, Richard F. Weeks* and *Henry L. Bayles* of counsel], for the defendants.

ROSENMAN, J. Plaintiff's predecessor in title, the fee owner of a building at Forty-fourth street and Fifth avenue, New York city, entered into a lease with the Central Mercantile Bank of New York on November 23, 1926, covering a portion of the premises for the purposes of a bank for a period from February 1, 1927, to February 1, 1948. The rentals were graduated each five years from the sum of $82,500 per year at the commencement of the term, to the sum of $128,333 per year for the last six years of the term.

The lease contained the following provision:

" (1) If, before the commencement of the term, the lessee be adjudicated a bankrupt, or make a ' general assignment,' or take the benefit of any insolvent act, or if a Receiver or Trustee be appointed for the lessee's property, or if this lease or the estate of the lessee hereunder be transferred or pass to or devolve upon any other person or corporation, except as herein elsewhere provided, this lease shall thereby, at the option of the lessor be terminated, and in that case, neither the lessee nor anybody claiming under the lessee shall be entitled to go into possession of the demised premises. If, after the commencement of the term, any of the events mentioned above in this sub-division shall occur, or if the lessee shall make default in fulfilling any of the covenants of this lease, or if the demised premises become vacant or deserted, the lessor may give to the lessee ten days' notice of intention to end the term of this lease, and thereupon at the expiration of said ten days (if said condition which was the basis of said notice shall continue to exist), the term under this lease shall expire as fully and completely as if that day were the date herein definitely fixed for the expiration of the term and the lessee will then quit and surrender the demised premises to the lessor, but the lessee shall remain liable as hereinafter provided.

" If the lessee shall make default in the payment of the rent reserved hereunder, or any item of ' additional rent ' herein mentioned, or any part of either or in making any other payment herein provided for, or if the notice last above provided for shall have been given and if the condition which was the basis of said notice shall exist at the expiration of said ten days' period, the lessor may immediately, or at any time thereafter, re-enter the demised premises and remove all persons and all or any property therefrom, either by summary dispossess proceedings, or by any suitable action or proceeding at law, or by force or otherwise, without being liable

to indictment, prosecution or damages therefor, and re-possess and enjoy said premises together with all additions, alterations and improvements. In any such case, or in the event that this lease be ' terminated ' before the commencement of the term, as above provided, the lessor may, at the lessor's option, re-let the demised premises or any part or parts thereof, as the agent of the lessee, and receive the rents therefor, applying the same first to the payment of such expenses as the lessor may have incurred, and then to the fulfillment of the covenants of the lessee herein, and the balance, if any, at the expiration of the term first above provided for, shall be paid to the lessee. In the event of re-entry or of termination of this lease by summary proceedings or otherwise, whether or not the premises be re-let, the lessee shall, until the time when this lease would have expired but for such termination, remain liable for, and the lessee hereby agrees to pay to the lessor the equivalent of the amount of all of the rent and additional rent reserved herein, less the avails of reletting, if any, and the same shall be due and payable by the lessee to the lessor on the several rent days above specified, that is, upon each of such rent days the lessee shall pay to the lessor the amount of deficiency then existing. The lessee hereby expressly waives any and all right of redemption in case the lessee shall be dispossessed by judgment or warrant, of any court or judge. The words ' re-enter ' and ' re-entry ' as used in this lease are not restricted to their technical legal meaning.

" In the event of a breach or threatened breach by the lessee of any of the covenants or provisions hereof, the lessor shall have the right of injunction and the right to invoke any remedy allowed at law or in equity, as if re-entry, summary proceedings and other remedies were not herein provided for."

The Central Mercantile Bank was later merged with the Bank of United States. The Bank of United States remained in the premises until December 11, 1930. On that date it was admittedly insolvent; and its affairs and assets were taken over by the Superintendent of Banks pursuant to the provisions of the Banking Law.

The possession of the Superintendent continued to August 25, 1931, when he moved out. On May 6, 1931, the Superintendent notified all creditors of the bank pursuant to section 72 of the Banking Law to present their claims against the bank on or before the 29th of June, 1931.

On May twenty-fifth plaintiff served a notice upon the Superintendent of Banks to terminate the lease. This notice read in part as follows: "Please to take notice that in pursuance of a certain indenture of lease dated the 23d day of November, 1926, * * * and particularly under the provisions of paragraph 1, page 3 thereof,

the Lessor hereby elects to terminate the said lease, and hereby notifies the Lessee that ten (10) days after the date of the service of this notice, the said lease shall expire and come to an end. The Lessor does not hereby waive any of its rights against the Lessee accruing by the terms of the said lease in the event of the service of this notice and hereby asserts the liability of the Lessee for the payment of rent under said lease to the date of the expiration thereof, to wit, the first day of February, 1948.

" Any possession of the demised premises by the Lessee and/or its successors in interest on and after the 5th day of June, 1931, shall be deemed to be at the sufferance of the Lessor and shall be subject to termination at any time thereafter on notice and demand of the Lessor, which hereby expressly reserves unto itself the right after that date to re-enter and regain possession of the premises, the Lessee and/or its successors meanwhile to remain liable to the Lessor for the reasonable value of the use and occupation of the said premises."

At the same time the plaintiff filed with the Superintendent its proof of claim for " all sums of rent and other charges accruing and to accrue " under the terms of the lease. Its claim contained the following statement: " Such liability and the amount thereof is now unliquidated and unascertained, the same being contingent as to the date of its accrual upon the date to which use and occupation of the demised premises shall be paid for by the Superintendent of Banks of the State of New York, and as to the amount thereof being contingent upon the amount that the lessor may realize upon re-letting the demised premises and/or parts thereof and upon the term for which said demised premises may be re-let."

On September 1, 1931, the plaintiff served upon the Superintendent a supplemental notice of termination of lease which contained the following clause: " The lessor hereby asserts its right to serve this notice, supplemental to notice heretofore given, dated and served on May 25, 1931, and to terminate the said lease on the ground, additional to that set forth in the previous notice, that the demised premises on August 25th, 1931, became vacant and deserted."

While the Superintendent remained in possession he sent to the plaintiff each month an amount equal to the sum reserved in the lease, in payment for his use and occupation. Each of these payment checks was accompanied by a notice from the Superintendent which stated in part as follows: " The Superintendent has not as yet determined whether to adopt or reject any lease of the premises in question and the payment made now, as evidenced by the enclosed check, is tendered with the understanding that no such election has been made."

The plaintiff has received no further payments since the 25th of August, 1931. The premises involved have not been relet, and have been vacant since that date.

The parties have stipulated that the rental value of the premises for the balance of the term, as of the date of trial, is $56,000 per year.

For the purposes of this discussion it will be assumed that the notice of termination of May 25, 1931, was authorized by the provisions of paragraph " 1 " of the lease, that it was effective to terminate the lease, and that the supplemental notice of September 1, 1931, was unnecessary. The defendants contend that the conditions of default in paragraph " 1 " authorizing the notice had not occurred. At least one, however, had occurred. Within the meaning of the termination clause the Superintendent is taken to be a receiver. (*Matter of Union Bank*, 204 N. Y. 313, 316; *Yokohoma Specie Bank, Ltd.*, v. *Chinese Merchants Bank*, 219 App. Div. 256, 258; *Lafayette Trust Co.* v. *Beggs*, 213 N. Y. 280, 284.)

The question here presented is whether or not the plaintiff has a claim against the Bank of United States which may share in the bank's assets, pursuant to the provisions of section 72 *et seq.* of the Banking Law.

Although sections 72 to 77 of the Banking Law are supposed to provide a comprehensive and exclusive means for the ascertainment of claims against a banking corporation in liquidation (*Matter of Egan*, 258 N. Y. 334), they help us little in determining whether or not the plaintiff's claim should be allowed to share equally and ratably with other claims. The statute provides for notice to " creditors " (§ 72). It authorizes the Superintendent to reject any " claim " if he doubts the " justice or validity " thereof. Persons whose claims are rejected are referred to as " claimants " (§ 75). If a claim is " accepted," the " claimant " is entitled to share ratably with other " general creditors " in the distribution of the assets of the bank (§ 76). Only " creditors " may participate in such distribution (§ 78). The statute does not define the word " creditor " or the words " claim " or " claimant." Whether those terms embrace this plaintiff and his cause of action is a matter exclusively for judicial construction.

There must first be ascertained the nature of the plaintiff's claim. It is for a breach of contract against the bank for a violation of the lease by reason of the insolvency of the bank, upon the basis of which the plaintiff, pursuant to the provisions of the lease, terminated it. Damages are sought in an amount equal to the difference between the rent reserved and the rental value of the premises for the remainder of the term. The relief demanded is that the Superin-

tendent set aside sufficient money from the assets of the bank to pay the plaintiff its *pro rata* dividend based upon such amount.

After a lessor terminates a lease or re-enters because of a breach, the liability of the lessee is strictly limited to and by the express provisions of the covenant. Rent as such comes only from the land demised, and arises solely from the relationship of landlord and tenant. (*Matter of Roth & Appel*, 181 Fed. 667.) When the right to occupy ends, the obligation to pay rent ceases. Where a lease permits a termination or a re-entry on the happening of a prescribed event, the lessor has the right to terminate or re-enter when the event occurs. If he does, the lessee's liability for rent as such vanishes. The lessee may, under certain conditions, however, continue to be liable to the lessor even after the relationship of landlord and tenant has been abrogated. This liability is possible only if the lease provides that it shall survive the termination or re-entry. And if the lease does so provide, the liability is circumscribed closely by the express terms set forth in the instrument. The court cannot insert different or additional terms. (*Hermitage Co.* v. *Levine*, 248 N. Y. 333.) In the *Hermitage Co.* case, the court stated the rule for construing the covenant of liability on the part of the tenant (pp. 337, 338): " No doubt, a damage clause can be drawn in such a way as to make a tenant responsible for monthly deficits after re-entry of his landlord, and this without charging the landlord with a duty to account for a surplus in other seasons. Such a clause will be found in *McCready* v. *Lindenborn* (172 N. Y. 400), where the lease was to the effect that the tenant would pay the difference in rent ' in equal monthly payments as the amount of such difference shall from time to time be ascertained.' A clause similar in effect, though more uncertain in its terms, will be found in *Mann* v. *Munch Brewery* (225 N. Y. 189), where the tenant was to ' continue liable for the payment of the rent and the performance of all the other conditions herein contained.' None the less, in the absence of a provision that points with reasonable clearness to a different construction, a liability for damages resulting from a reletting is single and entire, not multiple and several. The deficiency is to be ascertained when the term is at an end (*Harding* v. *Austin*, 93 App. Div. 564 [per WILLARD BARTLETT, J.]; *Halpern* v. *Manhattan Ave. Theatre Corp.*, 173 App. Div. 610; 220 N. Y. 655; *Darmstadt* v. *Knickerbocker C. & E. S. Co.*, 104 Misc. Rep. 547, App. Term, per LEHMAN, J.; 188 App. Div. 129). The tenant when ejected ceases to be a tenant. What he covenants to pay is the damage, not the rent. To hold him for monthly deficits is to charge him with the obligations of a tenant without any of the privileges. He must pay in the lean months, without recouping in the fat ones. He must do this, though it may

turn out in the end that there has been a gain and not a loss. A liability so heavy may not rest upon uncertain inference. * * *

" If the damage clause as drawn gives inadequate protection, the fault is with the draftsman. The courts are not at liberty to supply its omissions at the expense of a tenant whose liability for the future ended with the cancellation of the lease except in so far as he bound himself by covenant to liability thereafter."

As was stated also in *McCready* v. *Lindenborn* (172 N. Y. 400, at p. 409): " Aside from this, however, when the parties by their contract provide for the consequences of the breach, lay down a rule to admeasure the damages and agree when they are to be paid, the remedy thus provided must be exclusively followed."

The lease in question permitted the landlord to recover from the bank the difference between the original rent and the avails of the reletting on each rent day reserved in the lease, that is, on the first of each month. This is the measure of damages to which the plaintiff is restricted by the lease. The question, therefore, is whether or not this right which existed against the tenant is provable against the Superintendent of Banks as liquidator.

It is no longer open to question in this State that claims for future rent, " as rent," against an insolvent bank arising under a lease are not provable against its assets. (*Varick Spring Corporation* v. *Bank of United States*, 264 N. Y. 297.)

In that case the same defendants and the same insolvency were involved. On July 7, 1931, the Superintendent formally repudiated the lease. He moved out on August 15, 1931, having paid for the use and occupation of the premises to that date. The landlord refused to accept the surrender of the premises. On the contrary, it maintained that it would not consider the lease canceled but would continue to hold the bank liable for the rent under the terms of the lease. The lessor did not sublet the premises or any part thereof. It filed a claim for the rent to accrue during the period of the lease. The demand was that a sufficient amount be set aside necessary to pay a *pro rata* dividend on the balance of the rent, as it became due each month.

The Superintendent rejected the claim and resisted the suit on the same ground that he urges here: that the claim was contingent, indefinite and uncertain, and, therefore, was not entitled to share in the distribution of the assets of the bank. The Court of Appeals sustained the defense.

In that case the lease had not been terminated. It was still in existence, and the landlord was seeking not damages but rent each month under the lease. The plaintiff here contends that the holding in the *Varick Spring* case is not determinative of its rights,

pointing out that it is seeking to recover, not rent during the existence of the lease, but damages for its breach after its termination.

There is a well-defined distinction between liability for rent during the life of a lease and liability for damages subsequent to its abrogation. (*Kottler* v. *New York Bargain House, Inc.*, 242 N. Y. 28, 33.) This distinction produces a difference in the respective legal rights and responsibilities of lessors and lessees in certain disputes between them. We are here concerned with only one situation — where the Superintendent of Banks has taken possession of the business and assets of a bank lessee pursuant to the Banking Law, and holds them for distribution among those urging claims against the bank. In such a case can it be said that a claim for rent prior to termination is so different from one for damages after termination, that the ruling of the *Varick Spring Corporation* case is not applicable here?

The basis of the decision in the *Varick Spring Corporation* case was that the claim for rent was contingent and uncertain and that it accordingly could not share in the assets of the bank.

The claim of the plaintiff in this case for damages is equally contingent and uncertain. It is contingent, both as to its existence and as to its amount. Contingency as to either would be sufficient to prevent the plaintiff's participation in distribution.

The rule barring contingent claims is a development of the common-law, and arose independently of statute. It is based upon the desire of the courts to do equity, and upon the sound public policy of expeditious settlement of estates. In the leading case of *Pennsylvania Steel Co.* v. *New York City Railway Co.* (198 Fed. 721) the reason for the principle is enunciated: " Equitable considerations must govern and the underlying ones are these: The assets of an insolvent corporation belong to the creditors. Although not, strictly speaking, a trust fund, they partake of the nature of one. The administration of the estate is for their benefit. Its purpose is to make an equitable distribution. Equality is equity. Debts and liabilities, present and future, certain and contingent, stand upon the same *equitable* basis. If delays were unimportant, the settlement of estates would be kept open until contingencies should become certainties. If courts were omniscient, distribution would always be through the resolving of all contingencies and the ascertainment of the present worth of all demands. But courts cannot look with certainty into the future. Delays are important. The settlement of estates cannot be held open to await contingencies. Orderly administration requires that at some reasonably speedy time all claims should be so liquidated as to afford a basis for distribution.

" A court of equity, then, in prescribing what claims shall take in the distribution of the estate of a corporation must regard, on the one hand, the substantial right of all creditors to share in their debtor's property, and, on the other, the necessity for expeditious administration and, giving due consideration to both, must make rules which are practicable as well as equitable."

Opinions in several cases have enumerated the various contingencies which might condition a claim for rent or for damages arising under a lease: the lessor might not relet the premises, but might himself resume possession of them; the lessee might be evicted by a paramount title; the premises might be destroyed by fire or other cause; new lessees might pay as much as or more than the rent reserved in the old lease; the lessor might not exercise its option to re-enter; the trustee in insolvency might assume the lease; the lessee might quit the premises with the lessor's consent; the lessee might assign with the lessor's consent under such circumstances as to relieve the lessee of further obligation. (*Bowditch* v. *Raymond*, 146 Mass. 109; 15 N. E. 285; *Watson* v. *Merrill*, 136 Fed. 359; *Matter of Roth & Appel*, 181 id. 667.)

The date upon which the status of a claim is to be fixed, as to whether it is contingent or not, differs in different courts and in different situations. The rule developed in the Federal courts, unaided by any statute, adopted as a basis the date on which all claims must be filed. (*Pennsylvania Steel Co.* v. *New York City Railway Co.*, *supra; Filene's Sons Co.* v. *Weed*, 245 U. S. 597.) The date under the former bankruptcy statutes is the time of filing of the petition. (Bankruptcy Act, § 63, subd. a, cl. 1 [U. S. Code, tit. 11, § 103, subd. a, cl. 1]; *Watson* v. *Merrill*, 136 Fed. 359; *Matter of Roth & Appel*, 181 id. 667.)

In this State, in the absence of a controlling contrary statute, the date is when the Superintendent took possession. (*Varick Spring Corporation* v. *Bank of United States*, *supra; Matter of State Bank of Canastota*, 238 App. Div. 39; affd. without opinion, 263 N. Y. 571; *People* v. *American Loan & Trust Co.*, 172 id. 371; *People* v. *Metropolitan Surety Co.*, 205 id. 135.)

In *Kottler* v. *New York Bargain House, Inc.* (*supra*) Judge CARDOZO indicated that there is no substantial difference between the two kinds of claim in so far as their provability against an insolvent estate is concerned. There the suit was against a bankrupt personally, after a composition agreement had been made and confirmed. It did not involve a claim against the assets of the bankrupt estate. The landlord had relet the premises at a lower rental after the receiver in bankruptcy vacated the premises.

The lease provided: " If the said premises, or any part thereof, shall become vacant during the said term, the landlord or his repre-

sentatives may re-enter the same, either by force or otherwise, without being liable to prosecution therefor; and relet the said premises as the agents of the said tenants, and receive the rents thereof; applying the same, first to the payment of such expenses as they may be put to in re-entering, and then to the payment of the rent due by these presents; the balance, if any, to be paid over to the tenants, who shall remain liable for any deficiency."

The question as to whether the re-entry and subletting by the lessor, as agent for the tenant, resulted in a termination of the lease; or whether the lease survived, so that the lessee's liability continued after the composition agreement had been executed. The lease did not have a clause which charged the tenant with a deficiency or with damages after termination. With respect to any continuing liability, the lease covered only the single situation of the premises becoming vacant " during the term." In that event the landlord was empowered to re-enter and relet.

The court held that he would not by this action be putting an end to the lease. He would merely be collecting rent as agent for the tenant, who would be liable for any deficiency and who would get the benefit of any surplus. If the lease had been terminated, the landlord would not have been able to do more under the terms of the lease than repossess the premises. The lease did not give him any further rights against the defendant. Pointing out that " there is a distinction between a reletting by a landlord after the expiration of a term and a reletting as agent for the tenant during the existence of the term," the court held that the lease was still in existence and that the lessor had the right under the lease to look to the tenant for deficiencies in rent. The court was not discussing the provability of a claim of this kind against the assets of the bankrupt, but the rights of the landlord against the tenant personally.

The tenant, however, in his argument, had relied upon the decision in *Matter of Hevenor* (144 N. Y. 271), and Judge CARDOZO proceeded to discuss and distinguish that case. It involved an assignment for the benefit of creditors. The assignment directed that the assignee should " apply the residue of the estate to the payment of all the debts and liabilities of the assignor, then due or to grow due." The assignor had leased premises from the landlord claimant for five years. The indenture provided that if the premises became vacant during the term because of non-payment of rent or otherwise, the lessors might re-enter or might relet them as the agents of the lessee and apply the avails thereof to the payment of the rent due under the lease. The lessor re-entered after the assignment, and relet the premises for a part of the balance of the term at a lower rental. He filed a claim for the difference up to the

date of filing, and for the whole rent reserved in the lease from the date of filing to the expiration date. The court disallowed the claim on the ground that by re-entering the premises and reletting them as agent of the lessee, the lessor terminated the lease and substituted therefor a claim for damages, which was too contingent to permit it to share in the assets of the insolvent. The court also stated, as *obiter dictum*, that if the lessor had permitted the premises to remain vacant, he would have had a valid claim against the assets of the estate for the rent reserved in the lease.

This holding in the *Hevenor* case was cited in the *Kottler* case, to show that the re-entry and reletting by the landlord in the *Kottler* case resulted in a termination of the lease, and that the action was not for rent, as Judge CARDOZO said, but for damages.

Judge CARDOZO rejected the argument, stating that the conclusion in the *Kottler* case that the claim was one for damages was not necessary to the decision, for the reason that the claim had been properly rejected, irrespective of whether it was for rent or for damages; " the *Hevenor* case does not exact of us a ruling that the claim is one for damages. What was said in that opinion as to the effect of a reletting was unnecessary to the decision (cf. *Gray* v. *Kaufman Dairy & Ice Cream Co.*, 9 App. Div. 115, 118; reversed, but on other grounds, in 162 N. Y. 388). The controversy was one between a landlord and an assignee for the benefit of creditors. The landlord claimed the right to participate in the assets by reason of a deficiency of rents accruing after the assignment. In such circumstances, it was immaterial whether he proved for rent or for damages. His claim must have been rejected whether classified one way or the other. Rent due at the date of the assignment must be paid with other debts and liabilities of the assets of the estate. Not so, however, of rent falling due thereafter. (*Matter of Roth & Appel*, 181 Fed. Rep. 667; *Watson* v. *Merrill*, 136 Fed. Rep. 359; *Matter of Link*, 14 Daly, 148; *Deane* v. *Caldwell*, 127 Mass. 242.) "

Therefore, the *Kottler* case shows: (1) There is a distinction between a claim for rent during the life of a lease and one for damages after its termination, when the dispute is between a landlord and a tenant; but (2) where the question is the provability of a landlord's lease claims against an insolvent tenant's estate, there is no such difference between them. They are both to be rejected. The *Kottler* case was, of course, subsequently followed and approved as to its holdings and as to its dicta in the *Varick Spring Corporation* case.

The reported cases also generally agree that no distinction is to be made between the two classes of claims.

Judge CARDOZO in *Kcttler* v. *New York Bargain House, Inc.* (*supra*), cited with approval the leading bankruptcy cases on the subject which had been decided at that time (*Watson* v. *Merrill, supra,* and *Matter of Roth & Appel, supra*) in support of his statement that " rent due on the date of assignment must be paid with other debts and liabilities out of the assets of the estate. Not so, however, of rent falling due thereafter." In neither of these cases is any differentiation made between the two kinds of claims, in so far as sharing in the assets of insolvent corporations is concerned.

In *Watson* v. *Merrill* (*supra*) the landlord filed a claim in bankruptcy for the difference between the rent reserved in a lease and the rental value of the premises. The contention of the landlord's counsel was that the claim was not for rent but for damages. As to this, the court stated (at p. 360): " It is, however, the nature of the claim, and not the name which is applied to it, that conditions its provability in bankruptcy. \* \* \* While counsel and the referee call this allowance damages for a breach of the lease, it is in fact nothing but that part of the monthly rent which was to accrue after the petition was filed."

And (at p. 362): " Since his claim is in fact for nothing but $12.50 per month of the agreed rents payable after the filing of the petition in bankruptcy, the application to it of the title of a claim for damages for a breach of the lease neither changes its nature, nor makes it more provable than it would have been if its real character had been described by its name."

It was held that the claim was too contingent to be provable in bankruptcy.

In *Matter of Roth & Appel* (*supra*) the lease provided that upon bankruptcy the lessor should have the right to re-enter, in which case the lessee agreed to pay on the first day of each month the difference between the rents reserved and those " with due diligence collectible, on account of rents of the demised premises for the preceding month, up to the end of term remaining at the time of the entry." Upon bankruptcy the landlord relet the premises for the balance of the term. He then filed a claim for the full rent from the time of bankruptcy to the date of reletting, and for the difference between the rent reserved and the rent stipulated in the new lease for the remainder of the term. In disallowing the claim, the court said (at p. 672): " looking at the claim as it existed either at the time of the petition or adjudication, it was altogether contingent in its nature:

" (1) It was uncertain, as just pointed out, whether the lessor would re-enter and terminate the lease.

" (2) In case the lease was terminated, it was uncertain whether there would be any loss in rents. * * *

" For these reasons, we are satisfied that the claim in question as based upon the indemnity covenant is contingent, and not provable against the bankrupt estate under the first clause of section 63a of the bankruptcy act."

Nor has the distinction been made in other jurisdictions, notably in Massachusetts, whose rulings on this question our Court of Appeals has followed. The opinion in the *Varick Spring Corporation* case pointed out that the Court of Appeals had " approved the rule of the Massachusetts courts (*Deane* v. *Caldwell*, 127 Mass. 242; *Towle* v. *Commissioner of Banks*, 246 Mass. 161) that such claims fall outside of any possible statutory right to share in dividends ordered to be paid on claims which existed when the Superintendent took possession." In *Towle* v. *Commissioner of Banks* (*supra*), approved in the *Varick Spring Corporation* case, the claim against the Bank Commissioner, who had taken possession of an insolvent bank, was filed in the alternative, for damages or for rents. The lease provisions were analogous to the lease under consideration. The court held that it made no difference whether the claim was for rent or for damages; and concluded that, in either event, the claim was not provable against the Commissioner, because it was " not more than contingent." In *Bowditch* v. *Raymond* (146 Mass. 109; 15 N. E. 285) claim was made against a bankrupt estate arising out of a lease. The landlord contended that the amount claimed was not rent but damages. The court stated that " however this may be, the sums to be paid partake of the character of rent so largely that they come within the same principle. The covenant is to pay the rent reserved, reduced by such sum as the lessors might receive from the new lessees if they should relet the premises. * * * The existence of any debt in the future depends upon contingencies, and therefore the appellant's claim cannot be proved." In *Deane* v. *Caldwell* (*supra*), approved in the *Varick Spring Corporation Case* (*supra*), the claim was against the administrator of an insolvent estate and was in the alternative for damages or for rent. The court, however, disallowed the claim as contingent, irrespective of whether it was designated as rent or damages.

After the decision by our Court of Appeals in the *Kottler* case the Supreme Court of the United States decided *Manhattan Properties, Inc.*, v. *Irving Trust Company Cases* (291 U. S. 320). The reasoning, if not the actual holding in those cases, is determinative of the issues at bar. The question there presented was: " Whether a landlord may prove in bankruptcy for loss of rents payable in the

future, where the claim is founded upon the bankrupt's covenant to pay rent, and, in the alternative, upon his breach of a covenant that in event of bankruptcy, the landlord may re-enter, and if he does, the tenant will indemnify him against loss in rents for the remainder of the term " (p. 328).

In the first case the lease contained a covenant permitting the landlord on re-entry to let the premises as agent for the landlord, and charging the tenant with the difference in rental for each month during the rest of the term. The total rent reserved for the portion of the term subsequent to the bankruptcy was $58,000. The present rental value of the leased premises for the remainder of the term was stated to be $33,000. The lessor filed its claim for damages for loss of future rents, which it asked to have liquidated at the sum of $25,000, the difference between the rent reserved and the rental value.

In the second case the lease provided that the landlord might enter and terminate the lease, and that the lessee would " indemnify the lessor against all loss of rent * * * by reason of such termination, during the residue of the term." The claim filed by the landlord was for the difference between the rent reserved and the rental value of the premises.

The court thoroughly reviewed the history of the various decisions and statutes on the subject. It concluded that such claims for loss of rent or for damages were not provable. The court said: " In both cases the lessor has the choice whether he will terminate the lease. Neither the bankrupt nor the trustee has any such option, except as the trustee may be entitled by law to disclaim. And upon the exercise of the option by the landlord, a new contract, distinct from that involved in the original letting, becomes operative. While there is some color for the claim that the bankruptcy is an anticipatory breach of the lease contract, entailing a damage claim against the estate, this cannot be true as respects these independent covenants of indemnity. For here, the landlord does not rely upon the destruction of his contract by the bankruptcy; he initiates a new contract of indemnity by the affirmative step of re-entry. And this new contract comes into being, not by virtue of the bankruptcy proceeding, but by force of the act of re-entry, which must occur at a date subsequent to the filing of the petition. Obviously this contract of indemnity is not breached by bankruptcy, and cannot be breached until the duty of indemnifying the landlord arises. That obligation cannot be complete until the expiration of the original term. There can be no debt provable in bankruptcy arising out of a contract which becomes effective only at the claimant's option and after the inception of the proceedings, the

fulfillment of which is contingent on what may happen from month to month or up to the end of the original term. Compare *In re Ells*, 98 Fed. 967; *Slocum* v. *Soliday*, 183 id. 410; *In re Roth & Appel, supra*. Such a covenant is not, as petitioners contend, the equivalent of an agreement that bankruptcy shall be a breach of the lease and the consequent damages to the lessor be measured by the difference between the present value of the remainder of the term and the total rent to fall due in the future. The covenants appearing in the leases in question cannot be made the basis of a proof of debt against the estate."

It is true that what was actually decided was the provability of claims under the Federal bankruptcy statute. It is also true that since the decision the bankruptcy statute has been amended to change the rule. (Pub. No. 296 [48 U. S. Stat. at Large, 911, chap. 424] and Pub. No. 387 [48 U. S. Stat. at Large, 991, chap. 580], 73d Congress [U. S. Code, tit. 11, § 103, subd. a].) But the opinion is decisive as to the following: (1) Claims for future rent may not be proved whether designated as damages or not; (2) claims based upon a covenant similar to the one here under consideration may not be proved because they are contingent as to existence and as to amount; (3) under such a covenant there can be no claim for the difference between the rent reserved and the fair rental value, but only for the measure of damages specified in the lease, viz., the difference between the rent reserved and the amount actually received upon a subletting.

Our State courts, along with the Federal and other courts, have denied validity to such claims in insolvency matters. Of course our Legislature, as a matter of policy, can change that rule, as the Congress did. In the absence of such change the holding in the *Varick Spring Corporation* case must control, not only in claims for rent but in claims for damages, the essential similarity between which has been so definitely pointed out by the Federal and other cases.

Even if the New York rule were the same as the Federal and Massachusetts rule as to the date on which claims must be certain and not contingent, viz., the last date for filing claims, the plaintiff would still be barred here, for on June 29, 1931, it was still uncertain whether or not any deficiency would accrue from month to month thereafter until the expiration of the lease. (*Manhattan Properties, Inc.*, v. *Irving Trust Co., supra; Towle* v. *Commissioner of Banks, supra.*)

The plaintiff himself recognized and stated in his proof of claim that the " liability and the amount thereof is now unliquidated and unascertained, the same being contingent as to the date of its

accrual upon the date to which use and occupation of the demised premises shall be paid for by the Superintendent of Banks of the State of New York and as to the amount thereof being contingent upon the amount that the lessor may realize upon reletting * * * and upon the term for which said demised premises may be relet."

The rights of the plaintiff against a bank itself are different from its rights against the assets of a bank in the hands of the Superintendent. The difference is vital. In the first case, the contest is one between the landlord and the bank. In the other, it is between the landlord and all the other creditors and depositors of the bank. As was pointed out by the court in *Matter of State Bank of Canastota (supra)*, a bank is a creature of the State which reserves the right to intervene, exercise its sovereign power and close the bank at will. Persons contracting with it must be presumed to have contracted in the light of these fundamentals of State statutory policy in force for so many years. The power of the State is exercised and should be guided by judicial construction, in the interests of all alike.

When and if the demands of all creditors entitled to share in the assets which come into the hands of the Superintendent have been equitably adjusted, each claim, contingent or otherwise, may be thereafter pursued against the bank itself. It is no answer to this conclusion to state that the debtor may then not be in business, or not be able to satisfy financially the claims against it. This should have been considered before any contracts were made with it. (*Matter of Bank of Canastota, supra; People v. Metropolitan Surety Co.*, 205 N. Y. 135.)

The plaintiff relies principally upon the case of *People v. St. Nicholas Bank* (151 N. Y. 592). In that case the claim was against the receiver of a bank under a lease for a term of five years. In statutory proceedings for the dissolution of the corporation for insolvency, a receiver was appointed who shortly after his appointment vacated the premises. Thereupon the lessor re-rented the premises under a new lease for the balance of the term at reduced rental. His claim was for the difference between the rent reserved and the amount to be received on the sublease for the balance of the term. The Appellate Division allowed the claim, but certified to the Court of Appeals the following question: " Whether or not the claimant, D. O. Mills, by re-renting the premises to the German American Bank, canceled the open subsisting engagement, and substituted a claim for a contingent liability of the bank, which the receiver had no power to recognize." The Court of Appeals answered the certified question in the negative and allowed the claim, holding that it was not a contingent claim.

The statutes under which this case was decided are referred to in the opinion of the court on page 597. They of course do not apply to the case at bar. Their effect seems to be to allow claims whether contingent or not. (2 R. S. 464, 470, part 3, chap. 8, tit. 4, §§ 74–77.) They direct the receiver to give notice to all persons holding " open and subsisting engagements " and require that all such engagements " shall be ascertained and adjusted as far as may be." Receivers are directed to withhold an amount sufficient " for the purpose of cancelling and discharging any open and subsisting engagements."

By force of these statutes, the lease constituted a subsisting engagement which was required to be satisfied and canceled before the receiver could be discharged. (See *People* v. *National Trust Co.*, 82 N. Y. 283, 287, construing the same statutes.)

The court distinguished the *Hevenor* decision partly on the ground of the " greater latitude of judgment and action  *  *  *  contemplated by the provisions of the statutes," which " bears little comparison with the situation of an assignee under a general assignment for the benefit of creditors, whose scope of powers and duty is prescribed by that instrument."

In so far as the *St. Nicholas Bank* case differs in result and reasoning from the conclusions of later authorities, it is no longer controlling. (*Varick Spring Corp.* v. *Bank of United States, supra,* and *Kottler* v. *New York Bargain House, supra.*) The court in the *St. Nicholas Bank* case, in reliance on the now discredited dictum in the *Hevenor* case, assumed that if there had been no subletting, the claim for the rent due under the lease would have been provable. It proceeded then to hold that the subletting merely diminished the amount of the provable debt.

Plaintiff also relies upon *Filene's Sons Co.* v. *Weed* (245 U. S. 597). There the lease expressly provided that the tenant should pay " the difference between the rental value and the rent  *  *  * named in the lease for the residue of the term." There is no such covenant in the lease in the case now being considered.

The court said (p. 602): " The contract was not that all the rent for the term should become presently due, it was not for rent at all, but was a personal covenant that liquidated the damages upon a footing that was familiar and fair." It was held that the covenant did not provide for a penalty, because the damages contracted for in the lease were upon a basis " familiar and fair."

The attempt of the landlord to come within the rule of *Filene's Sons Co.* v. *Weed* (*supra*) is disposed of in the opinion of the court in *Manhattan Properties* v. *Irving Trust Co.* (*supra*). The difference is pointed out between a covenant which permits the lessor to have

a choice as to termination of the lease (as in this case) and a covenant which provides that bankruptcy shall itself be a breach of the lease and that the consequent damages to the lessor be measured by the difference between the present value of the remainder of the term and the total rent to fall due in the future (as in the *Filene's Sons Co.* case).

In the case now under discussion, as in the *Manhattan Properties* case, the lessor was given the option to re-enter upon bankruptcy and to terminate the lease. As stated by the court, only the lessor had the option and upon the exercise of that option a new contract distinct from that involved in the original letting became operative. (See the quotation from the opinion of the court, *supra.*)

Nor does the case of *Irving Trust Co.* v. *Perry* (293 U. S. 307) avail the plaintiff. The lease there provided not only a present method of liquidation, *i. e.*, the difference between the rent reserved in the lease and the fair rental value, but it also provided that the lease should be terminated *ipso facto* upon bankruptcy. Thus, when bankruptcy occurred, neither of the contingencies which prohibit proof of ordinary lease claims were present. A claim for damages arose simultaneously with the bankruptcy. The amount of the claim was not contingent, for the damage clause provided for a present method of liquidation.

The court said: " By the terms of the contract the filing of the petition in bankruptcy was, of itself, and irrespective of the election of lessor or lessee, a breach of the lease. The claim of the landlord, consequent upon the breach, arose and matured at the moment of the filing of the petition. The claim is not for rent reserved or upon the lease as such, but is founded upon an independent express contract, and hence within the very words of § 63 (a), 4."

Some of the other cases relied on by plaintiff are based upon the peculiar laws of the other jurisdictions where they arose, holding that upon breach of a lease an immediate claim for full damages may be recovered. In such jurisdictions claim for damages under a lease will be allowed, for there is no contingency involved. The law of this State, like the law of most States, is to the contrary. When a lease is terminated, the obligation to pay rent ceases. What remains is an obligation to pay under the particular covenant, if any, contained in the lease surviving termination. Unless that covenant provides for a method of present liquidation (*Filene's Sons Co.* v. *Weed, supra; Irving Trust Co.* v. *Perry, supra*), any action to recover a deficiency or damages is premature unless brought at the end of the demised term, or, if the lease so provides, as monthly deficiencies are ascertained. (*Hermitage Co.* v. *Levine, supra; McCready* v. *Lindenborn, supra.*)

The plaintiff does not come within the rule of *Filene's Sons Co.* v. *Weed* (*supra*) or *Irving Trust Co.* v. *Perry* (*supra*) as it claims by virtue of the clause of the lease above quoted, which gives to the lessor " in the event of a breach or threatened breach \* \* \* the right of injunction and the right to invoke any remedy allowed at law or in equity, as if re-entry, summary proceedings and other remedies were not herein provided for." That clause was not intended to apply to the measure of damages. It is a familiar clause in leases, giving landlords additional remedies, in case of violations or threatened violations, with respect to the repossession of the premises. It provides only an option as to remedy, not as to the amount of damages or as to the extent of liability of the tenant. The latter are definitely fixed in the lease, without any option in the lessor.

Accordingly, judgment is directed for the defendants.